| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| R. Scott Andrews, SBN 219936<br>KIMBALL, TIREY & ST. JOHN LLP<br>2040 Main Street, Suite 500<br>Irvine, CA 92614<br>Tel: (949) 476-5585<br>Fax: (949) 476-5580<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Movant | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>**Bettina Mary Bakrana**<br>**aka Mary Bettina Cameron**<br>**aka Mary Bettina Bakrana**<br>**aka Mary Bettina Lortin**<br><br><div align="right">Debtor(s).</div> | CASE NO.: **8:22-bk-11762-SC**<br>CHAPTER: **7** |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l)**<br>**(with supporting declarations)**<br>**(UNLAWFUL DETAINER)** |
| | DATE: **November 16, 2022**<br>TIME: **10:00 am**<br>COURTROOM: **5C**   on the **5th**  floor |

| Movant: **Irvine Apartment Communities, L.P.** |
|---|

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012     ☑ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☑ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: __10/19/2022__

Law Offices of Kimball, Tirey & St. John LLP
_____
Printed name of law firm (if applicable)

**R. Scott Andrews, SBN 219936**
_____
Printed name of individual Movant or attorney for Movant

/s/ R. Scott Andrews
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER
CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
(Unlawful Detainer)**

1. **Movant is the:**

   a. ☐ Owner of the Property
   b. ☑ Authorized Agent of the owner of the Property
   c. ☑ Other (*specify*):

2. **The Property at Issue (Property):**

   Type of Property:  ☑ Residential  ☐ Nonresidential

   *Street Address*:  **718 Veneto**
   *Unit/Suite Number*:
   *City, State, Zip Code*:  **Irvine, CA  92614**

3. **Bankruptcy Case History:**

   a. ☑ A voluntary  ☐ An involuntary  petition under chapter  ☑ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*): **10/17/2022**

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was entered on (*date*):

   c. ☐ A plan was confirmed on (*date*):

4. **Pursuant to 11.U.S.C. § 362(b)(22) and (23) there is no stay because (*check all that apply*):**

   a. ☐ Movant commenced an eviction, unlawful detainer action or similar proceeding against the Debtor involving
   residential property in which the Debtor resides and:

   (1) ☐ The Debtor has not filed and served on Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become
   due during the 30-day period after the filing of the petition.

   (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on Movant the further certification
   required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has
   been cured.

   (4) ☐ Movant filed and served an objection to the Debtor's certification.  A copy of the objection is attached as
   Exhibit _____.  A hearing on this objection is set for (*date*) _____.

5. **Grounds for Relief from Stay: (*check all that apply*)**

   a. ☑ Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of the bankruptcy petition date, the Debtor had
   no right to continued occupancy of the premises, as follows:

   (1) ☑ Movant caused a notice to quit to be served on the Debtor.

   (2) ☑ An unlawful detainer proceeding was commenced on (*date*) **11/23/2021**_____.

   (3) ☐ An unlawful detainer judgment was entered on (*date*) _____.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                          Page 3                                          **F 4001-1.RFS.UD.MOTION**

(4) ☐ Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

(5) ☐ Movant acquired title to the Property by foreclosure sale after the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

b. ☑ Pursuant to 11 U.S.C. § 362(d)(1) the Debtor's right to possession should be terminated because (*check all that apply*):

(1) ☑ The lease or other right of occupancy expired by its terms on (*date*) 11/08/2021 .

(2) ☐ The lease has matured, been rejected or deemed rejected by operation of law on (*date*) _____ .

(3) ☑ Lease payments have not been made after the filing of the bankruptcy petition.

(4) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant filed and served upon the Debtor a certification that ☐ such an action was filed or
☐ that within the 30 days preceding the certification, the Debtor has endangered the subject Property or illegally allowed the use of controlled substances on the Property. A copy of Movant's certification is attached as Exhibit _____. The Debtor ☐ has ☐ has not  filed an objection to Movant's certification. A copy of the Debtor's objection, if any, is attached as Exhibit _____. A hearing on this objection is set for (*date*) _____ .

(5) ☐ The bankruptcy case was filed in bad faith:

(A) ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

(B) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(C) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

(D) ☐ There was a recent transfer of all or part ownership of, or other interest in the Property without the consent of the Movant or court approval.

c. ☑ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

6. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor:

a. ☑ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other:

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                                    **F 4001-1.RFS.UD.MOTION**

7. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.)*

    a.  The UNLAWFUL DETAINER DECLARATION on page 7.

    b.  ☑ Supplemental declaration(s).

    c.  ☐ Other *(specify)*:

**Movant requests the following relief.**

1. Relief from stay pursuant to:  ☑ 11 U.S.C. § 362(d)(1)  ☑ 11 U.S.C. § 362(d)(2)

2. ☑ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☑ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☑ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this motion:
    ☐ without further notice.
    ☐ upon recording of a copy of the order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☐ Relief from stay is granted under 11 U.S.C. § 362(d)(4), if the order granting this motion is recorded in compliance with state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than two years after the date of entry of such order, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice.
    ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

11. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

            **F 4001-1.RFS.UD.MOTION**

12. ☐ If relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable;

   a. ☐ Establishment of a deadline for assumption or rejection of the lease.
   b. ☐ Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

13. ☐ Other relief requested.

Date: **10/19/2022**

                                   Law Office of Kimball, Tirey & St. John LLP
                                   _____
                                   Print name of law firm (*if applicable*)

                                   **R. Scott Andrews, SBN 219936**
                                   Print name of individual Movant or attorney for Movant (*if applicable*)

                                   /s/ R. Scott Andrews
                                   _____
                                   Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 6                                   **F 4001-1.RFS.UD.MOTION**

## UNLAWFUL DETAINER DECLARATION

I, (name of declarant) _Renée Doll_, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property because (specify):

   a. ☐  I am the Movant and owner of the Property.

   b. ☑  I manage the Property as the authorized agent for the Movant.

   c. ☐  I am employed by Movant as (title and capacity):

   d. ☐  Other (specify):

2. a. ☑  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐  Other (see attached):

3. The Property is:

   ☑ Residential   ☐ Nonresidential

   Street Address:        **718 Veneto**
   Unit/Suite Number:
   City, State, Zip Code:   **Irvine, CA 92614**

4. Movant is the  ☐ legal owner of the Property, or  ☑ the owner's legally authorized agent. A true and correct copy of the trustee's deed upon sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit __A__. A true and correct copy of the applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5. The Debtor asserts a possessory interest in the Property based upon:

   (1) ☐  a month-to-month tenancy

   (2) ☑  a lease that is in default

   (3) ☐  after a foreclosure sale that was held on (date): _____.

   (4) ☐  other (specify):

6. The Debtor failed to pay:

   a. ☐  The monthly rent of $_____ beginning on (date): _____.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☐ Other obligations including:

   (1) ☐ Common area maintenance charges

   (2) ☐ Property taxes

   (3) ☐ Other obligations (*specify*):

7. Procedural status

  a. ☐ The lease matured or was rejected on (*date*) _____:

   (1) ☐ by operation of law.

   (2) ☐ by order of the court.

  b. ☑ Movant caused a notice to quit to be served upon the Debtor on (*date*) **11/05/2021**, and a true and correct copy is attached as Exhibit **B**.

  c. ☑ Before the bankruptcy petition was filed:

   (1) ☑ Movant filed a complaint for unlawful detainer against the Debtor on (*date*) **11/23/2021**, and a true and correct copy is attached as Exhibit **C**.

   (2) ☑ Trial was held on (*date*) **07/18/2022**.

   (3) ☐ Trial was continued to (*date*) _____.

   (4) ☐ An unlawful detainer judgment against the Debtor was entered on the complaint for unlawful detainer on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

   (5) ☐ A writ of possession for the Property was issued on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

  d. After the bankruptcy petition was filed:

   (1) ☑ The Debtor has not filed and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

   (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

   (4) ☐ The Debtor filed and served on the Movant the certification required under 11 U.S.C. § 362(d)(1).

    (A) ☐ Movant filed and served an objection a copy of which is attached as Exhibit _____. A hearing on this objection is set for (*date*) _____.

    (B) ☐ Movant has not filed and served an objection.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 8                          **F 4001-1.RFS.UD.MOTION**

(5) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that the Debtor has endangered the Property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if filed, is attached as Exhibit ____. A hearing on this objection is set for: _____.

(6) ☐ Regular lease payments have not been made after the bankruptcy petition was filed.

8. ☐ The Debtor does not have an interest in the Property that could be assumed or assigned under 11 U.S.C. § 365.

9. ☑ The Property is not necessary to an effective reorganization because it is:

a. ☑ Residential, and is not producing income for the Debtor.

b. ☐ Commercial, but no reorganization is reasonably in prospect.

c. ☐ No longer property of the estate.

d. ☐ Other (specify):


10. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):


11. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page of facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not  granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not  granted.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014    Page 9    F 4001-1.RFS.UD.MOTION

(3) Case name: _____

Chapter: _____       Case number: _____

Date filed: _____       Date discharged: _____       Date dismissed: _____

Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

12. ☑ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☑ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☑ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/19/2022 | Renée Doll | Renée J. Doll |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                 Page 10                            F 4001-1.RFS.UD.MOTION

R. Scott Andrews, SBN 219936
KIMBALL, TIREY & ST. JOHN, LLP
2040 Main Street, Suite 500
Irvine, CA 92614
(949) 476-5585
(949) 476-5580 (fax)

**Attorneys for Movant**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>BETTINA MARY BAKRANA<br>AKA MARY BETTINA CAMERON<br>AKA MARY BETTINA BAKRANA<br>AKA MARY BETTINA LORTIN,<br><p align=right>Debtor</p> | ) Case No.: 8:22-bk-11762-SC<br>)<br>) Chapter 7<br>)<br>) **DECLARATION OF SUSAN GREEK IN**<br>) **SUPPORT OF MOVANTS MOTION FOR**<br>) **RELIEF AND ANNULMENT** |
| IRVINE APARTMENT COMMUNITIES,<br>L.P..<br><p align=right>Movant,</p>vs.<br><br>BETTINA MARY BAKRANA<br>AKA MARY BETTINA CAMERON<br>AKA MARY BETTINA BAKRANA<br>AKA MARY BETTINA LORTIN,<br><p align=right>Respondents.</p> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I, Susan Greek, declare as follows:

1. I am an attorney at law, duly licensed to practice before all of the Courts of the State of California. I am a Partner with Kimball, Tirey, & St. John, LLP; the attorney of record in this matter for Movant Irvine Apartment Communities, LP, and the information set forth below is of my own personal knowledge. If called and sworn as a witness, I would and could competently testify thereto.

2. At the trial date on July 18, 2022 trial date, Movant and Debtor, with the assistance of counsel, entered into a stipulation for possession of the subject premises.  Attached hereto as exhibit D is a true and correct copy of that stipulation..

3. Pursuant to the terms of the stipulation, the Defendant was to vacate the subject premises on or before September 30, 2022.

4. Debtor failed to vacate by that date.

5. I was the attorney present at the court hearing on October 17, 2022 wherein the court signed the order to enter judgment due to the Debtors failure to vacate as agreed.  The state court asked that Movant submit a judgment to the court.  That was done on the morning of October 18, 2022.

6. At no time during or after the hearing was myself, my office Debtor's state court counsel or the court made aware of the Bankruptcy filed in this instant case.

7. Our office became aware of the current Bankruptcy when the State Court counsel for the Debtor sent him a photo of the filing at 2:18 pm on October 18, 2022..

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed this 19th day of October 2022 at Irvine, California.

_____/s/_____

Susan Greek, Esq.

## NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES

Notwithstanding the opening of the Courthouse to in-person proceedings, in light of the overwhelming support by the Bar for continued virtual appearances, Judge Clarkson will continue utilizing ZoomGov in a hybrid format holding the majority of hearings by video, with an option for in-person hearings for evidentiary hearings and trials. Parties are directed to review Judge Clarkson's self-calendaring instructions for calendaring hearings, either by ZoomGov or in-person.

For any matter set for an in-person hearing in which any responding or interested party does not want to appear in-person, with Chambers' prior approval, virtual appearances are permitted utilizing ZoomGov, unless otherwise ordered by the Court. That party must contact Chambers at least seventy-two (72) hours prior to the hearing to arrange the virtual appearance.

ZoomGov: Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/default.aspx, and then selecting "Judge Clarkson" from the tab on the left-hand side of the page.

Hearing participants and members of the public may view and/or listen to hearings before Judge Clarkson using ZoomGov free of charge. Individuals may appear by ZoomGov video and audio using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device (such as an iPhone). Individuals may participate by ZoomGov audio only using a telephone (standard telephone charges may apply). Neither a Zoom nor a ZoomGov account are necessary to participate and no pre-registration is required. The audio portion of each hearing will be recorded electronically by the Court and constitute its official record.

Important: All persons are strictly prohibited from making any recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions. The Clerk of the Court maintains an audio recording of all proceedings, which recording constitutes the official record of those proceedings.

## Tips for a Successful ZoomGov Court Experience

1. Test the video and audio capabilities of your computer or mobile device in advance of the hearing (i.e., at least one day in advance).

   a. You can do this by clicking on the ZoomGov meeting link posting for the hearing and/or check your video and audio using the ZoomGov app.

2. If you intend to speak at the hearing, please find a quiet place from which to participate.

3. If you are connecting to the hearing using a wireless device, you should situate yourself in a location with a strong wireless signal.

4. Unless and until it is your turn to speak, please mute your audio to minimize background noise.

   a. If connected to ZoomGov audio by telephone, you can mute or unmute your connection by pressing *6 on your phone.

5. When you first speak—and each time you speak after someone else has spoken—please say your name. This may seem awkward but is essential to making a good court record. The only part of the hearing being recorded is the audio. If a transcript is requested, it is sometimes difficult for the transcriber to know who is speaking.

6. If you are participating by video, try to avoid having a window or bright background behind you. (You may, as a result, appear on video as a shadow.) If you cannot avoid the bright background, try using a desk lamp or other light source to brighten your face.

7. If you are participating by video using a personal computer, you may separately connect to the audio feed by telephone (for improved audio) using the call-in information provided for the hearing.

   a. If you do this, please connect to the video feed first. In the ZoomGov app, you will be assigned a Participant Code. Use this code to associate your video and audio feeds.

8. If available, a headset-microphone often provides better sound quality for listening and speaking.

9. Participants and members of the public should at all times remember that although conducted remotely, these hearings are official court proceedings, and individuals should act accordingly.

   a. If video is enabled, please wear attire consistent with the decorum of court proceedings.

   b. ZoomGov permits the use of virtual backgrounds to safeguard your privacy. If you choose to use a virtual background, please avoid backgrounds that are offensive or distracting.

10. ZoomGov video participants are permitted to specify a display name. If using video, please specify your complete name to assist the Court in creating a record of the proceedings.

11. Please refer to the Zoom Video Hearing Guide, accessible from the Court's main page, for further information.

# EXHIBIT "A"

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made on 03/12/2021 between San Marco Apartments LLC ("Landlord"), and Bettina Bakrania, (whether one or more, "Resident").

### Summary of Lease Terms

| | |
|---|---|
| **Premises** | 718 Veneto<br>Irvine, CA 92614 |
| **Lease Start Date** | 03/12/2021 |
| **Lease End Date** | 04/30/2022 |
| **Gross Monthly Rent** | $1845.00 |
| **Rent Due Date** | 1st day of each calendar month |
| **Security Deposit** | $600.00 |
| **Accepted Forms of Payment** | Personal check, money order, certified funds or online (eCheck or Credit Card) |
| **Make Rent Payable to** | San Marco Apartments |
| **Payment Mailing Address** | San Marco Apartments<br>PO BOX 2600<br>Newport Beach, CA 92658-2600 |
| **Web Address and Telephone Number** | https://residents.irvinecompanyapartments.com<br>(949) 975-1888 |
| **Management Agent Name and Contact Information** | Irvine Management Company,<br>a Delaware corporation<br>131 Theory Irvine, CA 92617<br>(949) 720-5600<br><br>*Note: Landlord may designate a new management agent upon written notice to Resident* |

1.  **Location:** The Premises is located in the San Marco Apartments community ("Community"). The Premises consists of a residential unit together with any appliances and other furnishings listed on the move-in form, and the Garage and/or number of Parking Space(s) listed in Section 6. Resident has had an opportunity to inspect the Premises and the common areas and amenities ("Common Areas & Amenities") and is satisfied as to all matters regarding their condition. Resident acknowledges that Landlord has made no representation or warranty of any nature regarding the condition of the Premises, Common Areas & Amenities, Community or the area where the Community is located. Floor plans and square footage displayed in marketing materials are approximations only and may not be relied upon by Resident.

2.  **Lease Term:** The Lease begins on the Lease Start Date and ends at 11:59 p.m. on the Lease End Date. Landlord makes no representation that the Premises will be ready for occupancy on the Lease Start Date. If Landlord is unable to deliver possession of the Premises on the Lease Start Date, the Lease End Date will not be affected and Landlord shall not be liable for damages to Resident. In such event, Resident shall not be responsible for payment of Rent for the period between the Lease Start Date and the time when Landlord delivers possession. If Landlord is not able to deliver possession within thirty (30) days of the Lease Start Date, either Landlord or Resident may, prior to the time when Landlord delivers possession, cancel this Lease by giving written notice to the other.

    2.1. **Expiration:** Upon expiration of the Lease, but not upon the earlier termination thereof, the tenancy shall automatically continue from month to month unless: (i) Landlord gives Resident written notice of Landlord's intent to terminate the tenancy in accordance with California Civil Code 1946.1; (ii) Resident gives Landlord written notice at least (30) days prior to the Lease End Date of Resident's intent to terminate the tenancy; or (iii) Landlord gives Resident any other termination notice allowed by law. In the event the tenancy continues on a month to month basis, the terms and conditions of the Lease shall apply, except Landlord may increase the Rent (as defined below) or otherwise change the terms of tenancy as allowed by law.

2.2. <u>Move Out</u>: Upon termination of the tenancy for any reason, Resident shall (a) timely vacate and remove all persons and personal property from the Premises and from all Parking Spaces, Garages, and storage spaces provided under the Lease, (b) return any keys, key fobs and/or remotes that were provided to Resident at move-in, and (c) provide Landlord with Resident's forwarding address. Resident also agrees to be subject to and comply with the following in addition to any applicable provisions contained in the Resident Handbook (the "Handbook") or community rules:

- Resident will return the Premises to Landlord in its original condition, exclusive of ordinary wear and tear, and is responsible for the cost to repair any damage to the Premises beyond "ordinary wear and tear."

- The paint in the Premises should last two years from move in. If Resident changes the color of the walls or ceilings, Resident will be charged for repainting to the original color.

- The Premises must be returned as clean as the day Resident moved in. If Resident elects to have Landlord's vendors clean the Premises upon move-out, Resident will be responsible only for removing Resident's belongings, trash and debris. If Resident leaves trash behind, Resident will be charged for the cost of the trash removal.

- The carpet in the Premises should last five years from installation. Additional costs may be incurred for damage beyond ordinary wear and tear, including without limitation, heavy soil, stains, carpet dye and carpet replacement.

3. <u>Rent</u>: Resident shall pay Landlord Gross Monthly Rent in the amount set forth on Page 1, in advance on or before the Rent Due Date. The Gross Monthly Rent is the amount set forth on page 1 of this Lease and does not include any other monetary obligations of Resident under this Lease, unless provided otherwise by law. Collectively, Gross Monthly Rent and all other monetary obligations of Resident under this Lease are referred to herein as "Rent". Rent for any partial month will be prorated based on a 30-day proration (except February, which will be prorated by the actual number of days in the month). Payments will not be accepted at the Community office. Payment must be made at either the physical or web address above, or at such other place or in such other manner as Landlord may from time to time designate. If payment is made by check or money order, Resident shall write Resident's Unit number on the check or money order. Resident bears the risk of loss of any payment made by mail, unless otherwise provided by law. Checks will be deposited immediately, regardless of whether they are post-dated. In accordance with California law, the Gross Monthly Rent is the Gross Rental Rate.

3.1. <u>Failure to Pay</u>: If Landlord serves a Notice to Pay Rent or Quit or Notice to Perform Covenant or Quit demanding payment, Resident must tender payment by cashier's check or money order only to cure the notice. At Landlord's option and without further notice, Landlord may apply payments first to any of Resident's unpaid Rent, or any other obligations due and owing under the Lease, of any kind whatsoever, and then to current Rent, regardless of notations on checks or money orders and regardless of when the obligations arose. As required by law, Resident is notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to fulfill the terms of Resident's financial obligations.

3.2. <u>Late Fees</u>: Resident acknowledges that if Resident pays Rent after the Rent Due Date, Landlord will incur certain costs, the exact amount of which is extremely difficult and impracticable to determine. Such costs may include, without limitation, processing, enforcement and accounting charges. Therefore, if any payment is not received by the Rent Due Date, Resident shall immediately pay $50.00 as a late fee. The parties agree this late fee represents a fair and reasonable estimate of the actual costs Landlord will incur by reason of late payment by Resident. Landlord's acceptance of Resident's payment of any late fee shall not constitute a waiver by Landlord of Resident's default with respect to the overdue amount, nor prevent Landlord from exercising any other rights and remedies available to Landlord.

3.3. <u>Returned Check</u>: If Resident's payment is returned by the financial institution for any reason, the amount shall be considered unpaid. Resident shall replace any returned payment with certified funds only. In addition to the balance due and any applicable late fee, Resident shall immediately pay a fee of $25.00 per returned check. After receipt of two (2) returned payments, Landlord may, at its option and at its sole discretion, require payment of Rent in the form of certified funds only.

4. <u>Security Deposit</u>: If the funds have not yet been paid, Resident shall pay Landlord a security deposit in the amount of $600.00 ("Security Deposit") upon execution of this Lease. Landlord may commingle the Security Deposit with other funds. The Security Deposit shall be refunded or applied as provided under applicable law. The Security Deposit will not be returned until Resident and all Occupants have vacated, and any Security Deposit returned by check shall be made out to all Residents named in this Lease, or as subsequently modified. If Landlord uses any part of the Security Deposit during the tenancy, Resident shall replenish the Security Deposit to its full amount within ten (10) days.

5. <u>Early Lease Termination Option</u>: Provided Resident is not in default under this Lease, Resident will have the option to terminate this Lease prior to the Lease End Date subject to the following terms and conditions: (a) Resident must provide Landlord with a minimum of 30 days' prior written notice of Resident's intent to vacate the Premises ("Notice to Vacate"), specifying the date of Resident's early move-out ("Early Move Out"), (b) concurrently with the giving of the Notice to Vacate, pay to Landlord a one-time payment equal to two times the Gross Monthly Rent ("Lease Break Fee"), in addition to any Concession Reimbursements, as set forth in the Concession Addendum, (c) timely observe and perform



all terms and conditions of the Lease through and including Early Move Out date, and (d) vacate and deliver possession of the Premises to Landlord on or before the Early Move Out date. Resident agrees that the Security Deposit shall not be used to pay for the Lease Break Fee or the Concession Reimbursements. If Resident vacates or abandons the Premises during the term of the Lease without exercising the early termination option, or fails to strictly comply with the terms and conditions of this paragraph, the Lease term shall be unaffected by the early termination option, and Landlord shall have all of the remedies set forth in paragraph 19.

**6. Parking:** Resident shall have the right to park up to two (2) vehicles in the following parking space(s): Carport #174 (the "Parking Space(s) and/or "Garage"). Landlord may change Resident's designated Garage and/or Parking Space(s) from time to time with seven days advance written notice. Additional parking rules and conditions apply; refer to the Handbook or contact the Community office for more information.

**7. Occupancy:** Only Resident and the following people are permitted to live in the Premises: Bettina Bakrania (the "Occupants").

**8. Household Safety and Resident's Related Parties:** Resident is responsible for ensuring the safety of, and for the conduct of Resident, Resident's Occupants, household members, guests, invitees and any others under Resident's control (collectively, "Resident's Related Parties") both inside and outside the home. Resident should carefully note the location of any fountains, pools, swimming pools, traffic or parking areas, balconies, patios, windows and parks. Open windows may present a fall hazard, particularly for small children or if furniture (such as couches, chairs or beds) is positioned directly near or below window frames. Positioning of furnishings in model units, website imagery and other marketing materials may not be relied upon in deciding where to safely place furniture. Window screens are not designed to be weight-bearing or prevent falls. Resident is responsible for the supervision and control of Resident's Related Parties while such persons are in the Premises or the Community, and is responsible for any damage or violation of the Lease or the Handbook caused thereby. **Violation of this Lease, the Handbook or any community rules by any of Resident's Related Parties shall constitute a material violation of this Lease by Resident.**

**9. Utilities:** Resident shall pay for utilities that are provided or allocated to the Premises in accordance with Landlord's Utility Addendum, which is incorporated herein by reference.

**10. Use of Premises, Community, Common Areas, and Amenities:** Resident agrees to use and maintain the Premises solely as a private residence for the Occupants and no one else without Landlord's prior written consent. Resident and Resident's Related Parties shall use the Premises, and Common Areas & Amenities, for the purpose for which they were designed or intended to be used, and in accordance with, and otherwise comply with, this Lease, the Handbook and any community rules that may be established by Landlord from time to time, including without limitation, posted signage. Additionally, Resident and Resident's Related Parties shall comply with any recorded covenants, conditions, restrictions, easements and agreements affecting the Premises or the Community. Resident and Resident's Related Parties shall not: (a) disturb, disrupt, annoy, endanger or inconvenience other residents or invitees within the Community, neighbors, Landlord, Landlord's property manager or the respective officers, directors, members, shareholders, partners, managers, employees, affiliates, contractors, vendors, or representatives of Landlord or Landlord's property manager ("Landlord's Related Parties"), (b) violate any civil or criminal statute, law or ordinance, or (c) cause damage to or commit or permit waste or nuisance in or about the Premises or the Community. Violation of this paragraph, at Landlord's option and subject to applicable law, shall be deemed a non-curable breach of this Lease.

**11. Alterations and Improvements:** Resident shall make no alterations or improvements to the Premises without first obtaining Landlord's written permission, including without limitation painting, wallpapering, window treatments, security or surveillance cameras, permanent shelving, flooring, or adding or changing any lock or security device. If Landlord allows any addition or change of lock or security device, Resident must provide Landlord with a key or code to the lock or device upon installation. If Landlord allows any other alteration or improvement, Resident is financially responsible for restoring the Premises to the condition in which it existed prior to the alteration or improvement.

**12. Damage and Repairs:**

**12.1. Repairs and Services:** Resident agrees to cooperate fully with and to undertake all efforts and tasks required by Landlord to prepare for and complete repairs and/or services. Resident shall give Landlord immediate written notice if repairs to or services at the Premises may be required. If Landlord makes repairs or provides services, and the condition requiring repair or services was caused by an act or omission of Resident, Resident shall pay on demand all reasonable costs of repair, services or restoration. This includes, but is not limited to, damage caused by Resident's failure to properly ventilate while using the kitchen and bathroom facilities, and costs incurred by Landlord as a result of Resident's failure to cooperate with and/or properly prepare for Landlord's efforts to provide necessary or agreed repairs and/or services to the Premises.

**12.2. Damage or Destruction:** If the Community and/or the Premises is totally or partially damaged or destroyed, or otherwise rendered totally or partially uninhabitable, by fire, flood, earthquake, accident or other casualty, Landlord shall have the option, in addition to any other options available by law, to (a) treat this Lease as continuing and repair or restore the Premises; or (b) terminate the Lease by giving written notice to Resident.

**12.3.** <u>Relocation</u>: Upon demand by Landlord, Resident and any other Occupants of the Premises shall promptly vacate the Premises to allow Landlord to make repairs, decorations, alterations or improvements, or provide services. Resident will comply with all instructions and requirements necessary to prepare the Premises for the work or services. Resident will not be required to pay Rent for the Premises for the period of time that Resident is required to vacate, unless (i) a condition requiring repair or service was caused by Resident or (ii) Landlord, at Landlord's expense and in Landlord's sole discretion, provides Resident with comparable alternative housing or a hotel during the period Resident is required to vacate the Premises. No other compensation shall be due Resident with respect to Resident's relocation from the Premises.

**12.4.** <u>Responsibility for Damage</u>: Resident is responsible for any of the following resulting from Resident's failure to comply with the terms of this Section 12: (a) damage to the Premises, Building or Community, (b) damage to property of Resident and/or other occupants of the Premises or the Community, and (c) personal injury to Resident or other occupants of the Premises or the Community.

**13. Resident Insurance Requirements: RESIDENT'S PERSONAL PROPERTY IS NOT INSURED BY LANDLORD.** Resident shall maintain at all times during the term of this Lease, at Resident's sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of (i) $100,000.00 personal liability, and (ii) the greater of $10,000.00 or the full replacement value of Resident's personal property, or greater amounts as may be needed as determined by Resident. Resident acknowledges that renter's insurance is for the benefit of both Resident and Landlord. If Resident elects to install a satellite dish as permitted by this Lease, Resident's policy shall specifically insure against claims for bodily injury, death or property damage occurring from the installation, maintenance, operation or removal of the satellite dish. The policy shall name Landlord as an additional interest or interested party. Resident shall provide Landlord with proof of such insurance to Landlord's satisfaction. To the greatest extent permitted by law, Resident waives any and all rights of recovery and rights of subrogation against Landlord and Landlord's Related Parties in connection with any damage, claim or loss that is or would be covered by Resident's insurance coverage. Failure to obtain and maintain renter's insurance is a material breach of this Lease.

**14. Landlord's Liability; Resident's Indemnity:** To the greatest extent permitted by law, Landlord and Landlord's Related Parties shall not be liable for any claims for damages or loss to Resident's or others' personal property, or injury or death to any person caused by any use of the Premises, the Community or any other facility under Landlord's control by Resident or Resident's Related Parties, or arising from any other cause whatsoever. Resident assumes all risk of harm in using the Premises and Common Areas & Amenities and agrees to hold Landlord and Landlord's Related Parties harmless from all liability for any such injury, loss or damage. Resident agrees that Landlord shall not be liable for matters (and this Lease shall not be terminated by any interruption or interference with services or accommodations due Resident) caused by strike, riot, orders or acts of public authorities, acts of other residents, accidents, interruption in or shortages of public utilities, the making of necessary repairs to the building in which the Premises is located or the Community, or any other cause beyond Landlord's control. Resident shall indemnify, defend and hold harmless Landlord and Landlord's Related Parties for any liability, damage, claims for personal injury and/or property damage, cost or expense (including reasonable attorneys' fees), including without limitation any claim brought by or on behalf of Resident's Related Parties, whether incurred by or made against Landlord or Landlord's Related Parties, caused by the negligent, willful or intentional act or omission of Resident or Resident's Related Parties.

**15. Subleasing and Short-term Rentals:** Resident shall not assign its interests under this Lease or sublease all or any part of the Premises. Resident may not list, advertise or rent the Premises for any type of short-term rental, including on Airbnb, Couchsurfing, VBRO, Craigslist or any other advertisement or listing service. Any attempted assignment, at Landlord's election, shall constitute a non-curable default. The original Resident under this Lease shall remain responsible for all of Resident's obligations even if additional Residents are added to or removed from the Lease.

**16. Bedbugs:**

**16.1.** <u>Resident Obligations</u>: Resident must report any signs of bedbugs immediately to Landlord by completing a Maintenance Service Request using the Resident Portal, or by visiting or calling the Community office. Delays in such reporting could result in the spread of bedbugs through the Premises or other areas of the Community. Resident's obligation to keep the Premises in clean condition includes the responsibility to inspect for the presence of bedbugs. Resident must fully cooperate with Landlord's pest control efforts, including without limitation, complying with any preparation recommendations provided by the pest control professional. Resident is responsible to pay for pest control services if Resident's conduct caused or contributed to the pest issue. Resident is responsible for any damages resulting from Resident's failure to comply with the terms of this paragraph.

**16.2.** <u>Information about Bedbugs</u>:

- <u>Bedbug Appearance</u>. Bedbugs have six legs. Adult bedbugs have flat bodies about 1/4 of an inch in length. Their color can vary from red and brown to copper colored. Young bedbugs are very small. Their bodies are about 1/16 of an inch in length. They have almost no color. When a bedbug feeds, its body swells, may lengthen, and becomes bright red, sometimes making it appear to be a different insect. Bedbugs do not fly. They can either crawl or be carried

from place to place on objects, people, or animals. Bedbugs can be hard to find and identify because they are tiny and try to stay hidden.

- **Life Cycle and Reproduction.** An average bedbug lives for about 10 months. Female bedbugs lay one to five eggs per day. Bedbugs grow to full adulthood in about 21 days. Bedbugs can survive for months without feeding.

- **Bedbug Bites.** Because bedbugs usually feed at night, most people are bitten in their sleep and do not realize they were bitten. A person's reaction to insect bites is an immune response and so varies from person to person. Sometimes the red welts caused by the bites will not be noticed until many days after a person was bitten, if at all.

- Common signs and symptoms of a possible bed bug infestation:
  - Small red to reddish brown fecal spots on mattresses, box springs, bed frames, mattresses, linens, upholstery, or walls.
  - Molted bed bug skins, white, sticky eggs, or empty eggshells.
  - Very heavily infested areas may have a characteristically sweet odor.
  - Red, itchy bite marks, especially on the legs, arms, and other body parts exposed while sleeping. However, some people do not show bedbug lesions on their bodies even though bedbugs may have fed on them.

For more information see the Internet websites of the United States Environmental Protection Agency and the National Pest Management Association.

Report possible bedbug activity immediately by completing a Maintenance Service Request on the Resident Portal, or by visiting or calling the Community office.

16.3. Housekeeping Practices: The following housekeeping practices, which are Resident's responsibility, may reduce the likelihood of a bedbug infestation: avoid accumulation of clutter; clean on a regular basis; arrange furniture to minimize bedbug hiding places; avoid use of secondhand furnishings; cover mattresses and box springs; and check baggage after trips.

## 17. Mold:

17.1 Reporting Obligations: At the time of move-in, Resident must inspect the Premises and note on the Move-In Inspection form the presence of any mold Resident observes. Resident must immediately report to Landlord any plumbing problems, failure or malfunction with the heating, ventilation, air-conditioning system, or laundry system. If Resident observes or otherwise becomes aware of the presence of visible or suspected mold, water intrusion or dampness in the Premises, including but not limited to water leakage from drains or faucets, discoloration (e.g. of walls, baseboards), dampness, musty odors in closets, loose, missing or failing grout or caulk, or other similar conditions (a "Mold Condition"), Resident shall immediately report the Mold Condition to Landlord in writing. Resident shall immediately notify Landlord if Resident experiences any adverse or unusual health conditions or effects which Resident reasonably believes are related to a Mold Condition. Landlord will not be responsible for any adverse health conditions or effects in the event Resident fails to promptly report in writing the adverse health conditions or effects, or a Mold Condition, to Landlord.

17.2 Housekeeping Obligations: Resident is responsible for cleaning the Premises, maintaining appropriate climate control within the Premises (including but not limited to the humidity level), and complying with the provisions of this paragraph to help prevent the occurrence of a Mold Condition.

- Open the windows when appropriate to increase air circulation. Use air conditioning, heating and/or fans as necessary to keep air circulating throughout the Premises. Ensure good air circulation in closets and/or use products to control moisture. Do not overfill closets or storage areas.

- Close windows and doors when appropriate to prevent rain and other water from coming inside the Premises.

- Clean and dust the Premises on a regular basis. Regularly vacuum, mop and clean using environmentally safe household cleaners to remove household dirt and debris that may contribute to mold growth. If a dryer is installed in the Premises, clean the lint screen regularly.

- Periodically clean and dry the walls and floors around the sinks, bathtubs, showers, toilets, windows and patio doors using a common household disinfecting cleaner. Thoroughly dry any spills on carpets and wipe up visible moisture.

- Wipe down and dry areas where moisture sometimes accumulates, like countertops, windows and windowsills. Periodically check for leaks, especially around windows, exterior doors, under sinks and around toilets.

- When showering, be sure the shower door or curtain is completely closed so water does not spray the wall or puddle on the floor.

- Use the bathroom fan or open the bathroom window when bathing or showering until all moisture has vented from the bathroom.



- Use the exhaust fan in the kitchen when cooking or while the dishwasher is running. Allow the fan to run until all moisture has vented from the kitchen.
- Water all indoor plants outside. Use a saucer or catch basin under any plant sitting directly on the floor. Do not maintain an excessive number of indoor plants.

17.3 <u>Responsibility for Damage</u>: Resident is responsible for any of the following resulting from Resident's failure to comply with the terms of this Section 17, including but not limited to Resident's failure to notify Landlord of a Mold Condition or relocate at Landlord's request: (a) damage to the Premises, Building, or Community, (b) damage to property of Resident and/or other occupants of the Premises or the Community, and (c) personal injury to Resident or other occupants of the Premises or the Community.

17.4 <u>Repairs: Relocation: Testing</u>: Resident must fully cooperate with Landlord's mold remediation efforts. In the event Landlord reasonably determines that Resident needs to vacate the Premises in order to remediate the Mold Condition, repair the Premises, or address Resident's reported adverse health conditions or effects, Resident shall relocate, either on a temporary or permanent basis, within three (3) days of Landlord's written request. In the event Resident conducts, or hires any third party to conduct, any type of mold inspection, survey or test within the Premises or any other of the Community, Resident shall immediately provide Landlord with a full and complete copy of any resulting report, statement or recommendation.

**18. Application Information:** Resident represents that all statements in Resident's Application to Rent ("Application") and in any other documentation provided to Landlord are accurate and complete. Landlord has relied upon the statements set forth in the Application in deciding to rent the Premises to Resident. If Resident omits or falsifies any information on the Application or in any other documentation provided to Landlord, such omission or act constitutes a non-curable default at the time of Landlord's discovery that the information was omitted or false. Resident hereby represents that Resident is not subject to any restrictions imposed by the U.S. Treasury Department's Office of Foreign Assets Control including but not limited to appearing on the Specially Designated National and Blocked Persons List ("SDN List") promulgated by the Office of Foreign Asset Control. Resident agrees to cooperate with Landlord's screening of the SDN list. If Resident is or comes to appear on the SDN, Resident shall be deemed in material non-curable default under the terms of this Lease.

**19. Remedies:** In the event of any violation, default or breach of this Lease by Resident, Landlord may exercise any or all remedies provided by this Lease or by law, including without limitation those set forth in Civil Code §§1161, 1951.2 and 1951.4. In such event, Landlord may recover damages including the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided. No remedy or election under this Lease shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity.

**20. Attorney's Fees:** If any legal action or proceeding is brought by either party to enforce any part of this Lease, the prevailing party shall recover, in addition to all other relief, reasonable attorney's fees not to exceed $2,000.00, plus court costs.

**21. Right of Entry:** Landlord has the right to enter the Premises as allowed by law. Landlord will serve Resident with reasonable written notice before entry unless:

- Entry is due to an emergency, surrender or abandonment of the Premises, or
- Resident agrees that Landlord may enter to make repairs or supply services at an approximate day and time within one week of the agreement, or
- Resident is present and consents at the time of entry, or
- The entry is otherwise permitted by law.

**22. Release of Information:** Resident grants Landlord the right to disclose information contained in Landlord's records regarding Resident or this Lease at any time, as follows: (a) in connection with the filing, reporting or sharing of credit report information, including without limitation, any negative credit report as a result of Resident's failure to pay amounts due under this Lease; (b) in conjunction with civil, criminal or administrative proceedings or pursuant to subpoena, court order, applicable law or regulation, or law enforcement or governmental agency request; (c) to Landlord's Related Parties, accountants, attorneys or insurers in connection with Landlord's business operations; (d) in connection with the use and/or services provided by Landlord's property management software system; or (e) for any other purpose permitted under applicable law or Landlord's Privacy Policy, which is available online at www.irvinecompany.com/privacy-policy. Resident may request a hard copy of the Privacy Policy from the Community office.

**23. Service of Process/Notices/Demands:** Service of process, notices and/or demands upon Landlord or the management agent may be served upon the following authorized agent: Corporation Service Company (CSC), 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833-3505, (916) 641-5100 or (800) 927-9800. Landlord may designate a new agent for service of process upon written notice to Resident.



**24. Termination:** Landlord and Resident agree and acknowledge that Landlord may non-renew and/or terminate this Lease as permitted herein and as otherwise permitted by law. The provisions of this paragraph are in addition to all other rights and remedies set forth herein.

**25. Enforcement:** Landlord's failure to enforce any term of this Lease, the Handbook or any policy shall not be deemed a waiver of Landlord's right to enforce such provision at any time, nor shall Landlord's acceptance of a partial payment be deemed a waiver of Landlord's right to full payment. Landlord's acceptance of Rent or any other payment with knowledge of any default by Resident shall not be deemed a waiver, nor shall it limit Landlord's rights, including without limitation Landlord's right to terminate the Lease or pursue an unlawful detainer action. Landlord is not obligated to enforce any provision of this Lease, the Handbook or any policy, and Landlord is not liable to any Resident for any violation by other residents of any such provision.

**26. Time, Interpretation and Integration:** Time is of the essence in this Lease. This Lease shall be construed in accordance with California law. All capitalized terms are defined in the Summary of Lease Terms unless otherwise defined in this Lease. If any provision of this Lease is held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Lease shall remain in full force and effect. This Lease, together with the Handbook, Disclosures and any other addenda, constitutes the entire agreement between Landlord and Resident. Resident acknowledges and agrees that Resident has been provided with a copy of or access to the Handbook, a copy of which may also be requested from the Community office. The Handbook, Disclosures and any other addenda, which may be periodically updated or revised by Landlord, are incorporated into and made a part of this Lease by reference. The parties consider each and every term, covenant and provision of this Lease to be material and reasonable. This Lease supersedes any and all oral or written representations or agreements that may have been made by either party prior to or on the date Landlord and Resident execute this Lease. Any modification to the terms of this Lease must be in writing and signed by both Landlord and Resident to be effective and enforceable.

If there are multiple Residents, each will be individually and completely responsible for the performance of all obligations under this Lease, jointly with every other Resident, and individually, whether or not in possession.

Resident understands that the tenancy will automatically continue on a month-to-month basis at the end of the term as specified in paragraph 2 above, unless terminated as allowed by this contract or by law. See paragraph 2.1 above.

RESIDENT:
NAME: _____  DATE: _March 1st, 2021_

LANDLORD:

San Marco Apartments LLC

NAME: _____  DATE: _____

By: Irvine Management Company,
    a Delaware corporation, its duly authorized agent

NAME: _____  DATE: _____

By: _____

NAME: _____  DATE: _____

Name: _Community Mgr._

NAME: _____  DATE: _____

Title: _R. Doll_

NAME: _____  DATE: _____

NAME: _____  DATE: _____

NAME: _____  DATE: _____





Document : I Resident Handbook and Community Disclosures
Description : Lease 3/12/2021 to 4/30/2022
Unit : 31-718

Company : Irvine Management Company
Property : San Marco Apartments
Packet name : NEW RESIDENT - Bakrania
Cover sheet generated date : 3/12/2021

# RESIDENT HANDBOOK

The rules in this Handbook (the "Rules") have been established for the Community. We may change these Rules at any time by giving written notice to you. To access the most current version of the Rules, request a copy from the Community office or access on the Resident Portal. Capitalized terms in this Handbook have the same meaning as in the Lease. Failure to comply with the Rules shall constitute a material breach of the Lease.

## Maintaining your Home

*Health and Safety:* You must properly use, operate and safeguard the Premises, including any furniture, furnishings or appliances and all mechanical, electrical, gas and plumbing fixtures, and keep them and the Premises clean, sanitary, uncluttered and well ventilated (particularly when using the bathroom and kitchen facilities). You must use your home in a way that does not create a health or safety hazard to any person or property in the building where the Premises is located (the "Building") or the Community. This includes keeping your home free of excessive personal property, pests, trash and dangerous materials. You may not hang anything from fire sprinklers. You must keep smoke and carbon monoxide detectors functioning and in good condition, and promptly notify the Community office of any malfunction. Other than ordinary household products, you may not under any circumstances store, use or dispose of any flammable, explosive, hazardous, toxic or radioactive material anywhere in the Premises, the Building or the Community. If the Premises includes a loft, any closet or storage space within the loft may be used only for storage of non-perishable items. You may not install or operate any appliances within the space.

*Caring for your Home and the Community:* You must keep your home clean, in good condition, and uncluttered. You may not place or distribute posters, signs, leaflets, pamphlets, solicitation materials, or similar items in windows or areas outside the Premises without our advance written permission, except as otherwise provided by law. No personal property may be kept in stairways, hallways, entryways or in other Common Areas & Amenities. Personal items stored or left in the Common Areas & Amenities will be considered abandoned and are subject to immediate disposal.

*Patios and Balconies:* If the Premises has a private patio or balcony, it is your responsibility to maintain such area in a clean and well-organized condition, and free from unsightly material. We reserve the right, in our sole discretion, to determine what may constitute unsightly material, and to prohibit, restrict and control the items on your patio or balcony. Using your patio or balcony for storage is not permitted. Patios and balconies must not be used as a place for animals to relieve themselves. Umbrellas, privacy screens and outdoor fixtures are not allowed without our prior written approval. Only patio furniture and a reasonable number of potted plants with saucers are allowed. Excessive plants, placing plants or other objects on patio or balcony ledges, and overwatering, are not permitted. Allowing water, or runoff containing pet waste or chemicals, to flow onto areas below is not permitted. We may set time and location restrictions for using clotheslines or drying racks.

*BBQs:* Use of any type of open-flame barbecue, grill, heater or similar device on patios or balconies is prohibited, except for an LP gas device with a supply bottle of 1 pound or less. Electric devices and barbecues are permitted.

*Fireplaces:* The Premises may include a wood-burning or gas fireplace. If it does, always make sure the flue above the fireplace is open before using it, and close the fireplace screen after the fire is started. If the Premises includes a gas fireplace, DO NOT ATTEMPT TO BURN WOOD OR ANY OTHER MATERIALS in it.

## Reporting a Maintenance Issue

Proper maintenance is important. You must give us prompt written notice if the Premises needs maintenance, repairs or services. To report a maintenance issue or request maintenance, complete a Maintenance Service Request using the Resident Portal, or by visiting or calling the Community office.

## Emergencies

An emergency is any serious, unexpected event that has caused or could cause injury or death to any person, or could shut down a business or cause physical or environmental damage. IN THE EVENT OF AN EMERGENCY, IMMEDIATELY CALL 911. After calling 911, promptly notify us.

In the event of an urgent plumbing issue (e.g., stoppage or overflow) turn off the "shut off" valve nearest the problem fixture and contact the Community office.

## Gates, Surveillance Cameras and Other Access Control Measures

Regardless of the presence of electronic gates, on-site personnel, patrol cars, surveillance cameras, alarm systems, or other features which may be present at the Community, we cannot guarantee or warrant, and provide no assurance

regarding, the security or protection of you, your household members, guests, or personal property. We are not authorized or equipped to provide law enforcement or emergency services. We may provide courtesy patrol services as a convenience; courtesy patrol personnel are authorized to enforce the terms of the Lease, this Handbook, and any other Community rules and regulations on our behalf. If we do provide any such personnel or systems, they should not be interpreted as providing additional security or protection, they are precautionary measures, and are subject to human error, absenteeism, tampering, cyber-attacks, or mechanical, electronic or software malfunctions. Gates are intended to control the flow of traffic and to promote privacy only, and are not intended to provide security.

**Key Release**
We will release keys to persons named on the Lease and to any individual you have designated in writing with a valid photo ID.

**Using and Enjoying the Community**
Common Areas & Amenities are meant for the use and enjoyment of all residents. You may not use these areas in any manner that disturbs, disrupts or annoys management staff, other residents, or their guests. Except in designated areas, the use of sports and recreation equipment such as bikes, mopeds, skateboards, roller skates and similar items are prohibited in the Common Areas & Amenities. You may not use Common Areas & Amenities for any commercial or business purpose, and absolutely no commercial group activities or fitness sessions are permitted without our advance written permission. Solicitation in the Community of any kind is strictly prohibited.

*Access*: We may suspend or remove access to Common Areas & Amenities at any time for the purpose of maintenance, repairs, improvements, or for any other reason, without notice and at our sole discretion. We may remove any amenity on a temporary or permanent basis without compensating you.

*Pools and Spas (if the Community has a pool)*:
A.    LIFEGUARDS ARE NOT PROVIDED AT ANY TIME. All swimmers swim at their own risk.
B.    Hours and rules are posted at the pool. You must abide by these Rules, all posted signage and applicable health and safety laws regarding use of the pools and spas. Keep pool and spa gates closed and latched when not in use.
C.    The pool and spa are for use by residents and their guests only. You must accompany your guests at all times. Children under the age of fourteen (14) and persons who are unable to swim may not use the pool or spa without adult supervision.
D.    Glass items of any kind in the pool areas are strictly prohibited, and pets are not permitted in the pool or spa areas.
E.    Swimming attire is required to be inside of the pool or spa, and no clothing other than swimming attire is allowed. Infants and incontinent persons must wear waterproof undergarments in the pool and spa.

*Fitness Centers (if the Community has a fitness center)*:
A.    THE FITNESS CENTER IS NOT SUPERVISED. Persons using the fitness center or any exercise equipment do so at their own risk. Carefully inspect each piece of equipment prior to use, and refrain from using any equipment that appears to be damaged, dangerous, or not properly functioning.
B.    Hours and rules are posted in the fitness center and must be followed.
C.    The fitness center is for use by residents and their guests only. You must accompany your guests at all times. For health and safety reasons, children under the age of fourteen (14) should not use the fitness center without appropriate supervision.
D.    Glass containers, smoking, eating, alcoholic beverages and pets are not permitted in the fitness center at any time.

*Business Centers/Lounge (if the Community has a business center/Lounge)*: Business Center/Lounge hours and rules are posted at each location. These areas are not to be used for extended periods of time and are not meant to be used in lieu of a personal office. These areas are for use by residents only. You must accompany your guests.

*Residential Use*: You may use the Premises, Common Areas and Amenities for residential purposes only. Except for a home office that does not generate traffic or visits to the Community, or a licensed and approved home child care center as permitted by applicable law, you are prohibited from operating any business in or about the Premises or the Community.

*Trash, Littering & Recycling*: Certain waste management practices have been developed for this Community. You must follow local regulations and our guidelines on depositing trash and the collection, sorting and recycling of waste products. You may not leave trash or litter in Common Areas or the Community. If the Community has trash chutes and/or trash

49866_2

11.2019

compactors, you may deposit only bagged trash in them. You may not dispose of boxes and other bulky material in trash chutes, as this clogs the chutes and causes several hours of maintenance on chutes and trash compactors.

**Filming of Employees**
You agree that you will not cause or permit any photographic, video or audio recording of our employees, affiliates, contractors, vendors, and/or agents anywhere in the Premises or the Community without our written consent, including without limitation, during the performance of work orders. You understand that such recording without our consent shall constitute a material breach of the Lease.

**Packages**
We may offer automated Parcel Lockers for you to receive packages. We may impose regulations regarding the use of Parcel Lockers, including access, time, and use restrictions, or impose service fees or other charges. We may also regulate disposal or return of unclaimed packages. You authorize us to accept any packages addressed to you and delivered to us in your absence, and agree to hold us harmless from accepting any packages and from any loss of or damage to the packages, except if caused by our gross negligence or willful misconduct.

**Smoking**
If smoking or vaping of tobacco products is permitted in the Premises, the Building or the Community, excessive or disruptive smoking or vaping is nonetheless prohibited. Smoking or vaping excessively, or in any manner which disturbs other residents of the Community, their guests, or our associates, is a material violation of the Lease. For purposes of this section, we have sole discretion to determine what constitutes excessive or disruptive smoking or vaping. Smoking, vaping, growing or manufacturing marijuana or any marijuana derivative is prohibited in the Premises, the Building and all areas of the Community.

**Guests**
You may not have overnight guests for more than 10 consecutive days or 20 days in a calendar year, and you are fully responsible at all times for the conduct of your guests. Please refer to your Lease for more information. You may have up to two guests in the Common Areas & Amenities at any given time. Your guests must be accompanied by you at all times when using the Common Areas & Amenities. Your guests may park only in spaces designated for "Guest Parking", and you are responsible for notifying your guests of the parking rules. Any guest vehicles parked outside of designated "Guest Parking" spaces are subject to tow, at the vehicle owner's expense.

**Pets and Animals**
Except as otherwise required by law, animals are not permitted in the Community, even temporarily, unless you obtain our prior written permission and sign a Pet Addendum. The size and type of pets permitted and the location where pets are permitted is determined solely by the Community.

**Vehicles & Parking**
*Parking:* You may park up to two (2) vehicles in the Community. You must first use your designated parking space to park your and your guests' vehicles, prior to utilizing open parking spaces. Open or unreserved parking spaces are available on a first-come, first-served basis, and spaces may be limited. Additional parking rules and conditions may apply. Contact the Community office for more information.

All vehicles must be insured and registered with our office, and additional vehicles must be authorized by us in writing. Permissible vehicles include automobiles, sport utility vehicles, pickup trucks, mopeds and motorcycles. Limousines, taxicabs, semi-truck cabs, commercial vehicles and recreational vehicles such as motor homes, boats, ATV's, golf carts and trailers, may not be parked or stored without our prior written permission. Parking is for licensed, operational vehicles only.

Parking in fire lanes is strictly prohibited. Motorcycles and mopeds must be parked in parking areas only and may not be left on sidewalks, patios or other areas. Unauthorized, inoperative or improperly parked vehicles, or vehicles remaining in the same space for more than three (3) consecutive days, will be towed away at the vehicle owner's expense. You may not store personal property in parking spaces or carports.

*Garages:* If you are assigned a garage, it may be used only for parking vehicles and the storage of small items. If you store items in your garage, you must leave enough space to park the number of vehicles the garage is designed to fit. An assigned garage is considered your designated parking space and must be used first, prior to utilizing open parking spaces

49866_2

11.2019

Electrical outlets in the garage may not be used to charge electric vehicles. You may not install or operate any appliances in the garage without our prior written permission. Vehicles may not be parked in front of garage doors unless the area is specifically designed for such parking. Garage doors must be kept closed when not in use. We have the right to inspect your garage at any time upon reasonable notice to determine compliance with the garage and parking rules.

*Electric Vehicle Charging Stations:* If the Community contains electric vehicle ("EV") charging stations, the stations may only be used for parking by an EV that is connected and actively being charged. Absolutely no idle parking is permitted in these stations. We may impose additional restrictions on the use of these stations; for example, we may impose time restrictions to ensure multiple residents may charge EVs during the day.

*Parking Permits:* You may be issued a parking permit. If you lose your parking permit, you will be charged for the cost of its replacement. Additional parking permit rules apply; contact the Community office for more information.

*Vehicle Maintenance & Washing:* Vehicle maintenance is not permitted within the Community. Vehicles may be washed only in designated car wash spaces. Car wash spaces, if provided, are marked and are for use only while washing a vehicle.

**Surveillance Cameras, Antenna, Drones and Satellite Dishes**
*Surveillance Cameras:* The Community may contain surveillance cameras in Common Areas & Amenities. You acknowledge and agree that you do not have any expectation of privacy in these areas. Surveillance cameras, if any, may not be monitored in "real time" and do not guarantee or warrant any increased security or safety within the Community. We may install additional surveillance cameras or discontinue use of existing surveillance cameras at any time, without notice. Any and all video or images captured or recorded by these surveillance cameras belong exclusively to us, and are subject to our Privacy Policy and Lease provisions.

*Antenna and Drones:* You may not install or use any type of antenna without our prior written permission, or install, use or maintain any electronic or other device that interferes with the operation of cable television, telephone systems, electrical systems or data transmission service or lines in the Community. Resident and Resident's Related Parties are prohibited from using or operating drones on or from the Community, including over or above the Community, neighboring or nearby properties. This paragraph is intended for the exclusive benefit of the parties hereto and shall not be for the benefit of, create any rights in, or be enforceable by, any other person or entity.

*Satellite Dishes:* You may install one satellite dish for personal use, subject to the following:
A.    The diameter of the dish must be one meter or less. The dish may not be connected to our telecommunications systems.
B.    The dish must be positioned inside the Premises private balcony, patio or terrace. No part of the dish may be attached to or extend beyond the railing.
C.    You must position, maintain and remove the dish in a manner that is consistent with industry standards and does not create a hazard to any person or property. The dish may not be positioned in a manner that causes physical modifications or structural damage to the property, such as holes drilled through exterior walls.
D.    Upon move out, you must remove the dish and pay for any resulting repairs or repainting.

**Moving & Deliveries**
You may move furniture to and from the Premises only between the hours of 9:00 A.M. and 6:00 P.M. unless the Community approves or designates different hours. You must remove packing cases, barrels or boxes you use and if you leave packing material in the Common Areas, you agree to pay our cost of removing it for you. You may only make deliveries through the service areas and passageways we designate.

**Fair Housing Provider**
We proudly do business in accordance with all federal and state fair housing laws and do not discriminate for any arbitrary reason or on the basis of any protected class, including age, ancestry, race, religion, national origin, color, sex or gender, sexual orientation, gender identity or expression, familial status, marital status, immigration status, citizenship, primary language, source of income, handicap or disability, medical condition, or genetic information.

## SAN MARCO APARTMENTS COMMUNITY DISCLOSURES

The following disclosures are made to Residents concerning matters that may affect them while living in the Community. If any information contained herein is of concern to you, please contact the applicable agency or the Community office for more information.

### PROPOSITION 65 NOTICE

⚠️WARNING: Building materials containing urea-formaldehyde resins, such as insulation, pressed wood materials, finishes, or adhesives, on this property can expose you to formaldehyde, which is known to the State of California to cause cancer. Fireplaces or unvented gas space heaters, natural gas-powered appliances, as well as exhaust from motor vehicles or other maintenance equipment, on this property can expose you to carbon monoxide and benzene, which are known to the State of California to cause birth defects or other reproductive harm. Talk to your landlord or the building manager about how and when you could be exposed to these chemicals in your building. For additional information go to www.P65Warnings.ca.gov/apartments.

### MEGAN'S LAW

Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

### PARKS AND TRAILS

The Community may contain a private park or may be located near public or private trails or park facilities. The parks may provide a variety of recreational amenities such as sports fields, picnic areas and children's play areas. The parks and trails may be lighted for night usage. Residents may hear noise from activities on nearby parks and trails or experience glare from lighting of such facilities. Please contact the Community Office for information regarding any private park within the Community. For questions regarding any nearby public parks or trails, please contact the parks or community services department of the city or county that operates or maintains such facilities.

### OPEN SPACE AREAS

The Community may be located near or adjacent to public open space land that may include trails, trailheads, parking facilities and other related improvements. These areas have been or may be dedicated to the City, County or another public agency for preservation as permanent open space. Wildlife from these areas may venture into the Community. Keep domestic pets indoors to protect them from being attacked by wildlife and to keep them from preying on endangered species in open space areas. When hiking or bicycling on trails within or near open space areas where public access is permitted, Residents must not leave designated trail areas as any activities outside of the trails may be harmful to protected plant and wildlife species.

### PESTICIDES

Pesticides may have been applied to the unit/building in the past, and a contract has been entered with a Structural Pest Control Company for periodic treatment of the buildings in the Community. You may contact the Community office to request specific information about which pesticides are to be applied and when they are to be applied. State law requires that you be given the following information:

*CAUTION: PESTICIDES ARE TOXIC CHEMICALS.* Structural Pest Control Companies are registered and regulated by the Structural Pest Control Board, and apply pesticides which are registered and approved for use by the California Department of Pesticide Regulation and the United States Environmental Protection Agency. Registration is granted when the State finds that, based on existing scientific evidence, there are no appreciable risks if proper use conditions are followed or that the risks are outweighed by the benefits. The degree of risk depends upon the degree of exposure, so exposure should be minimized.

If within 24 hours following pesticide application, you experience symptoms similar to common seasonal illness comparable to the flu, contact your physician or the Poison Control Center at (800) 222-1222 and the pest control company immediately, and notify Landlord.

### WI-FI SERVICE

Wireless broadband Internet service (Wi-Fi service) might be provided in certain portions of the Community, as arranged by Landlord through an independent provider. If a Wi-Fi service system is present or later installed, persons using the Wi-Fi service are subject to the terms of service of the provider. Any Wi-Fi service may be modified or discontinued at any

time, without notice. No representations or assurances are made as to whether Wi-Fi service will be installed or, if installed, that service will always be available, or that Wi-Fi service will be reliable or secure. Landlord is not responsible for the availability of Wi-Fi service or for any loss, damage or inconvenience experienced by any person using any Wi-Fi service provided in the Community.

**CONCIERGE SERVICES**
Your Community may offer Concierge Services, which may include referring Residents to third-party businesses. Landlord has no control over, and assumes no responsibility for, the products, services or practices of any of these businesses and disclaims any and all liability arising from Resident dealings with them. Landlord reserves the right to cancel or suspend Concierge Services at any time, without notice.

**ALARM SYSTEMS**
The Premises may be equipped with a built-in alarm system. All alarm system companies are independently owned and operated and not affiliated with Landlord. Landlord has no responsibility for the performance or operation of the alarm system company or any built-in alarm system.

**FLOOD HAZARD**
You may obtain information on hazards, including flood hazards, that may affect the Community from the web site of the California Office of Emergency Services at: www.caloes.ca.gov. Any insurance carried by Landlord will not provide coverage for loss of Resident's personal property including losses resulting from flood damage. Resident is required to maintain renter's insurance in accordance with the Lease, and should consider obtaining flood insurance to insure against flood damage to your personal possessions. Pursuant to California Government Code Section 8589.45(a)(4), Landlord is not required to provide additional information concerning potential flood hazards to the Community, and the information provided in this disclosure is deemed adequate to inform Resident.

RESIDENT:

NAME: _____     DATE: _____

NAME: _____     DATE: _____

NAME: _____     DATE: _____

NAME: _____     DATE: _____

NAME: _____     DATE: _____

NAME: _____     DATE: _____

NAME: _____     DATE: _____

LANDLORD:

San Marco Apartments LLC

By: Irvine Management Company, a Delaware corporation, its
duly authorized agent

By: _____

Name: _____

Title: _____

# EXHIBIT "B"

## <u>THREE (3) DAY NOTICE TO QUIT – NUISANCE/ILLEGAL ACTIVITY</u>

TO:   **Bettina Bakrania; All Unnamed Occupants**

AND ALL OTHERS IN POSSESSION:

NOTICE IS HEREBY GIVEN that within three (3) days after service upon you of this NOTICE, you are required to quit and deliver up possession of the subject premises to the undersigned or to **IRVINE APARTMENT COMMUNITIES, L.P.** who/which is authorized to receive the same, or the undersigned will institute proceedings against you to recover possession of said premises, to recover court costs, and attorneys' fees as permitted by law.

You are further notified that if you fail to comply, Owner/Agent does hereby elect to declare the forfeiture of your Rental Agreement under which you hold possession of the below-described premises.

You are being served with this NOTICE pursuant to California Code of Civil Procedure section 1161(4), in that you have used the subject premises for an illegal purpose, and/or in a manner constituting a nuisance, as defined by California Civil Code section 3479.

You have also breached the following provisions of your lease and/or the addenda thereto:

LEASE

> *"10. Use of Premises, Community, Common Areas, and Amenities: Resident agrees to use and maintain the Premises solely as a private residence for the Occupants and no one else without Landlord's written consent. Resident and Resident's Related Parties shall use the Premises, and Common Areas & Amenities, for the purpose for which they are designed to be used, and in accordance with, and otherwise comply with, this Lease, the Handbook and any community rules that may be established by Landlord from time to time, including without limitation, posted signage. Additionally, Resident and Resident's Related Parties shall comply with any recorded covenants, conditions, restrictions, easements and agreements affecting the Premises or the Community. Resident and Resident's Related Parties shall not: (a) disturb, disrupt, annoy, endanger or inconvenience other residents or invitees within the Community, neighbors, Landlord, Landlord's property manager or the respective officers, directors, members, shareholders, partners, managers, employees, affiliates, contractors, vendors, or representatives of Landlord or Landlord's property manager ('Landlord's Related Parties'), (b) violate and civil or criminal statute, law or ordinance, or (c) cause damage to or commit or permit waste or nuisance in or about the Premises or the Community. Violation of this paragraph, at Landlord's option and subject to applicable law, shall be deemed a non-curable breach of this Lease."*

**EXHIBIT** 2

## RESIDENT HANDBOOK

> ***"Using and Enjoying the Community***
> *Common Areas & Amenities are meant for the use and enjoyment of all residents.
> You may not use these areas in any manner that disturbs, disrupts or annoys
> management staff, other residents, or their guests. ...*
>
> *Pools and Spas (if the Community has a pool): ...*
> *B. ... You must abide by these Rues, all posted signage and applicable health and
> safety laws regarding use of pools and spas...*
>
> *Trash, Littering & Recycling: Certain waste management practices have been
> developed for this Community. You must follow local regulations and our
> guidelines on depositing trash and the collection, sorting and recycling of waste
> products. You may not leave trash or litter in the Common Areas or the
> Community."*

The grounds for the termination of your tenancy are as follows:

From the inception of your tenancy, you have repeatedly complained to
Management that they are not properly monitoring the pool area, not requiring
residents to wear face coverings while in the pool area or responding
appropriately when other residents are not following the rules. In doing so, you
send several emails to Management, sometimes multiple times in one day, and
threaten to take legal action against them. On one occasion, you also emailed
Management approximately twenty emails in a matter of thirty minutes.

Some examples of your correspondence with Management are as follows:

- On or about April 17, 2021, you emailed management stating that "several
  adults with NO face covering at all" were in the pool area with you.
- On or about April 18, 2021, you emailed management to complain that you
  observed children jumping the fence by the pool area, not wearing a face
  covering and threatened that "Renee is going to get fired over this." Tyler
  Fernandez responded within twenty minutes that he removed the children
  from the pool area.
- On or about April 18, 2021, you emailed management numerous times to
  complain that several other residents were not wearing masks, that the
  manager made a "snarky comment sent via email reminding me ( AND
  ONLY ME ) to wear a face covering" and stated that "If she's not reminding
  / policing anyone ELSE then it logically follows that it *is* Discrimination."
- Sharon Valdez responded with the following in pertinent part:

  > "We have pool reservations online so we can be in compliance with
  > both State and Local Health Authority Guidelines... The reservations are
  > so we have the proper number of households and or residents that may
  > use the pool at a time per the local guidance for pool capacity. ...

> Residents must adhere to physical distance guidelines both in and out of the pool. This is something we take seriously and we have been monitoring the pool area today (like every day). All residents are following rules by social distancing while in and out of the pool. If pools are monitored, such monitoring is limited to enforcement of physical distancing, face coverings, and limitations on gatherings."

- The same day, you responded that "no- one [sic] but me was 'monitoring'" and that you would be turn you videos over to the health department. You also claimed that you were being required to "unreasonably adhere to rules OTHERS ARE EXEMPT FROM."
- On or about April 19, 2021, you outlined that you had a pool reservation, were notified that masks were required, then, when you arrived for your reservation, observed several residents without masks and "bombard[ed] the office with emails" to complain. Your email expressed that you felt as though management ignored you and "MADE NO ATTEMPT TO RECTIFY THOSE WHO WERE FLOUTING THE RULES" after reminding you that you were required to wear a mask in the pool area, claiming that the rules were not being enforced equally.
- On or about April 26, 2021, you reported that an individual was not wearing a face covering in the jacuzzi.

On or about May 8, 2021, the Law Offices of Kimball, Tirey & St. John LLP served upon you a letter outlining Management's responses to your allegations and reminded you that Management "must be provided a reasonable amount of time to investigate complaints and may not be available immediately upon receiving a complaint to do so" in all instances. The May 9, 2021 letter also demanded that you cease and desist disrupting Management functions with such a high volume of correspondence and refrain from attempting to intimidate them into taking action they are not otherwise legally obligated to take. The letter warned that failure to comply may constitute a violation of your lease.

Shortly after receiving this letter, you began sending a barrage of emails to Management regarding a nearby resident, claiming that they were causing disturbances and that they had several unauthorized occupants in their unit. You frequently claimed to have a group of other residents who were complaining about the same neighbors, but Management did not receive any such complaints. Upon receiving your complaints, Management investigated and was unable to substantiate any of the same. They informed you that they could not confirm or gather any evidence substantiating your complaints despite attempting to on several occasions, but you have continued to repeatedly email Management on a regular basis about the same issue without providing substantive evidence. Additionally, you have provided misleading information to Management in an attempt to get them to take action against the other residents and also continuously use profane and disparaging language toward Management.

Furthermore, on or about September 4, 2021, another resident entered the resident services office to complain about another resident utilizing the pool shower to dye her hair blue. Upon arriving to investigate, Management observed that it was you who was dyeing your hair blue in the pool shower and also causing the shower head and surrounding tiles to be colored blue as well. Management informed you that you were not permitted to utilize the shower in this way or to utilize the shower for any reason other than to rinse off after using the pool or spa, its only intended purpose.

On or about September 11, 2021, you arrived at the resident services office and began pounding on the door extremely loudly, although the office was already closed for the day. A member of the Management staff who was still present in the office went to the door, reminded you that it was outside of office hours and asked you what you needed. You claimed that when you were using the pool shower, another resident approached you while walking her dog through the pool area. You were extremely upset and behaving in a hostile manner and demanded that Management remove the dog from the pool area. When Management informed you that they could not remove this dog from the pool area unless it was going into the pool. You claimed that the dog belonged to the same neighbors that have been complaining about for several months, but there was no evidence to support that. During the conversation, you became increasingly hostile, disrespectful and disparaging toward the staff member. Management staff then told you to submit your complaint in writing so that it could be reviewed and responded to during office hours and asked you to leave. He repeated himself multiple times before you finally complied.

As the staff member was leaving the office for the day, you again approached him and continued your complaint about the dog. The staff member politely reminded you that your complaint would be addressed, but they cannot take action unless a lease violation was confirmed. You then continued on a prolonged rant about the same neighbor you have been complaining about for several months. The staff member again demanded that you submit a written complaint so that it could be addressed appropriately.

The next day, you entered the resident services office to complain about the same neighbors again. During the interaction, you again were extremely agitated and became increasingly disrespectful toward Management staff. The staff member reminded you that your concerns have been taken seriously and investigated and that they cannot disclose any legal action taken against another resident, if any. Despite Management's statements, you continued ranting about the neighbors and began raising your voice and interrupting the staff member any time he attempted to speak. He stated twice that your concerns would be addressed appropriately, then you finally left.

Later that day, after the office was closed, you arrived at the office and knocked. The staff member reminded you of the office hours, but you demanded to be able

to enter the business center.  He reminded you that you could get your documents the next morning during the office hours, then you left.

On or about September 15, 2021, you sent two emails to Management claiming again to have several other residents complaining about the same neighboring residents and making the same allegations, but without providing substantive or verifiable evidence.

On or about October 1, 2021, the Law Offices of Kimball, Tirey & St. John LLP served upon you a THREE (3) DAY NOTICE TO PERMANENTLY PERFORM COVENANT OR QUIT demanding the following:

> **"YOU MUST PERMANENTLY COMPLY WITH THE ABOVE COVENANT WITHIN THE NEXT THREE (3) DAYS, EXCLUDING SATURDAYS AND SUNDAYS AND OTHER JUDICIAL HOLIDAYS, BY:**
> 1) **REFRAINING FROM DISRUPTING MANAGEMENT OPERATIONS, BY REPEATEDLY AND/OR FREQUENTLY SUBMITTING THE SAME COMPLAINTS WITHOUT VERIFIABLE OR SUBSTANTIVE EVIDENCE, DEMANDING THAT MANAGEMENT TAKE ACTION AGAINST OTHER RESIDENTS WITHOUT BEING GIVEN AN OPPORTUNITY TO SUBSTANTIATE THE COMPLAINTS, ARRIVING TO THE OFFICE OR AMENITIES OUTSIDE OF OPERATING HOURS AND DEMANDING ACCESS, OR OTHERWISE;**
> 2) **CEASING AND DESISTING ATTEMPTING TO INTIMIDATE, USING PROFANE AND DISPARAGING LANGUAGE AROUND OR OTHERWISE HARASSING OR DISTURBING MANAGEMENT STAFF; AND**
> 3) **ONLY USING THE COMMON AREAS AND AMENITIES IN THE MANNER INTENDED, INCLUDING BUT NOT LIMITED TO THE POOL SHOWER(S)."**

Shortly after you received the notice, you began sending numerous, repeated emails to the undersigned and Management and posting handwritten notes on the management office reiterating the same complaints without additional substantive evidence and alleging that Management was discriminating against you.

On or about October 4, 2021, at or around 11: 48 a.m., you approached the management office and taped three documents to the glass portion of the door. A staff member opened the door to speak to you about the documents and requested that you not tape anything to the door. Approximately one hour later, at or around 12:45 p.m., you taped a printed email to the glass portion of the door and knocked on the door continuously until angrily walking away.

Later that day, while the property's porter was attempting to clean the common area restroom, you exhibited hostile, rude and disrespectful behavior toward the porter and used profane language repeatedly, causing the porter to feel extremely uncomfortable and as though you were harassing her.

On or about October 9, 2021, when a staff member arrived to the property, she observed an abundance of feces around the main pool shower and in the pool. Management reviewed pool camera footage, and the staff members observed you enter the pool area at or around 10:00 p.m. then shortly after saw water running and a foot kick water and feces from the pool shower area toward the surrounding area and pool. You were the only person to enter or exit the pool area until the staff member arrived earlier that morning. The pool area had to be closed to all San Marco residents, and the pool vendor had to treat the pool with special chemicals to disinfect after the removal of your feces.

On or about October 14, 2021, the community's Service Manager informed Management that you left numerous trash items at the pool shower. That day, at or around 11:10 a.m., you also opened the business center door and intentionally threw a card on the ground for staff members to pick up. On the card, you wrote a request that the maintenance team return to your unit between 2:00 p.m. and 4:00 p.m. since you had been sleeping during your scheduled appointment earlier that day.

## YOUR TENANCY IS HEREBY TERMINATED.

The premises referred to are situated in the City of **IRVINE**, County of **ORANGE**, State of California, designated by the number, street and zip code as **718 VENETO, 92614**.

Dated:   11/5/2021

_____
Attorney for Landlord/Owner

CC: Santa Ana Housing Authority

Enclosure: Notice of Occupancy Rights under the Violence Against Women Act

# EXHIBIT "C"

Case 8:22-bk-11762-SC   Doc 11   Filed 10/20/22   Entered 10/20/22 10:03:56   Desc
Electronically Filed by Superior Court of California, County of Orange, 11/23/2021 08:00:00 AM.
30-2021-01232944-CL-UD-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Diana Cuevas, Deputy Clerk.

**UD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: **Shelley M. Crawford #219957** | | |
| FIRM NAME: **Kimball, Tirey & St. John LLP** | | |
| STREET ADDRESS: **2040 Main Street, Suite 500** | | |
| CITY: **Irvine**  STATE: **CA**  ZIP CODE: **92614** | | |
| TELEPHONE NO.: **(949) 476-5585**  FAX NO.: **(949) 476-5580** | | |
| EMAIL ADDRESS: **OCefiling@kts-law.com** | | |
| ATTORNEY FOR (name): **Plaintiff** | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Orange**
STREET ADDRESS: **700 CIVIC CENTER DRIVE WEST**
MAILING ADDRESS:
CITY AND ZIP CODE: **SANTA ANA, CA 92701**
BRANCH NAME: **CENTRAL JUSTICE CENTER**

PLAINTIFF: **IRVINE APARTMENT COMMUNITIES, L.P.**
DEFENDANT: **Bettina Bakrania**
[X] DOES 1 TO **10** inclusive

| **COMPLAINT - UNLAWFUL DETAINER*** | CASE NUMBER: |
|---|---|
| [X] **COMPLAINT**  [ ] **AMENDED COMPLAINT** (Amendment Number): | **30-2021-01232944-CL-UD-CJC** |

**Jurisdiction** (check all that apply):
[X] ACTION IS A LIMITED CIVIL CASE
Amount demanded  [X] does not exceed $10,000.
　　　　　　　　[ ] exceeds $10,000 but does not exceed $25,000.

[ ] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint (check all that apply):
　　[ ] from unlawful detainer to general unlimited civil (possession not in issue).　　[ ] from limited to unlimited.
　　[ ] from unlawful detainer to general limited civil (possession not in issue).　　[ ] from unlimited to limited.

Judge Kimberly A. Knill

1. *PLAINTIFF* (name each):
**IRVINE APARTMENT COMMUNITIES, L.P.**

alleges causes of action against DEFENDANT (name each):
**Bettina Bakrania**

2. a. Plaintiff is　(1) [ ] an individual over the age of 18 years.　(4) [ ] a partnership.
　　　　　　　(2) [ ] a public agency.　　　　　　　　　　　(5) [ ] a corporation.
　　　　　　　(3) [X] other (specify):  **Limited Partnership**

　b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of (specify):

3. a. *The venue is the court named above because defendant named above is in possession of the premises located at (street address, apt. no., city, zip code, and county):*
**718 Veneto**
**Irvine, Orange County, CA 92614**

　b. The premises in 3a are (check one)

　　(1) [X] within the city limits of (name of city):  **Irvine**

　　(2) [ ] within the unincorporated area of (name of county):

　c. The premises in 3a were constructed in (approximate year):  **2008**

4. Plaintiff's interest in the premises is　[X] as owner　[ ] other (specify):

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

*NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

Page 1 of 4

Form Approved for Optional Use
Judicial Council of California
UD-100 [Rev. September 1, 2020]

**COMPLAINT - UNLAWFUL DETAINER**

Civil Code, § 1940 et seq.
Code of Civil Procedure §§ 425.12, 1166
www.courts.ca.gov

CEB® Essential Forms
ceb.com

21-3208055

UD-100

| PLAINTIFF: IRVINE APARTMENT COMMUNITIES, L.P. | CASE NUMBER: |
|---|---|
| DEFENDANT: Bettina Bakrania | |

6.  a. On or about *(date):*  03/12/2021
    defendant *(name each):*
    **Bettina Bakrania**

    (1) agreed to rent the premises as a ☐ month-to-month tenancy  ☒ other tenancy *(specify):*  1 Year
    (2) agreed to pay rent of $          1,845.00 payable  ☒ monthly  ☐ other *(specify frequency):*
    (3) agreed to pay rent on the  ☒ first of the month  ☐ other day *(specify):*
    b. This  ☒ written  ☐ oral    agreement was made with
    (1) ☐ plaintiff.          (3) ☐ plaintiff's predecessor in interest.
    (2) ☒ plaintiff's agent.  (4) ☐ Other *(specify):*
    c. ☒ The defendants not named in item 6a are
    (1) ☐ subtenants.
    (2) ☐ assignees.
    (3) ☒ Other *(specify):*  Unknown
    d. ☐ The agreement was later changed as follows *(specify):*

    e. ☒ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached
       and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*
    f. ☐ *(For residential property)* A copy of the written agreement is **not** attached because *(specify reason):*
    (1) ☐ the written agreement is not in the possession of the landlord or the landlord's employees or agents.
    (2) ☐ this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7.  The tenancy described in 6 *(complete (a) or (b))*

    a. ☒ is not subject to the Tenant Protection Act of 2019 (Civil Code, § 1946.2). The specific subpart supporting why tenancy
       is exempt is *(specify):*  ( e )  ( 7 )
    b. ☐ is subject to the Tenant Protection Act of 2019.

8.  *(Complete only if item 7b is checked. Check all applicable boxes.)*

    a. ☐ The tenancy was terminated for at-fault just cause (Civil Code, § 1946.2(b)(1)).

    b. ☐ The tenancy was terminated for no-fault just cause (Civil Code, § 1946.2(b)(2)) and the plaintiff *(check one)*

    (1) ☐ waived the payment of rent for the final month of the tenancy, before the rent came due, under
          section 1946.2(d)(2), in the amount of $
    (2) ☐ provided a direct payment of one month's rent under section 1946.2(d)(3), equaling $
          to *(name each defendant and amount given to each):*

    c. ☐ Because defendant failed to vacate, plaintiff is seeking to recover the total amount in 8b as damages in this action.

9.  a. ☒ Defendant *(name each):* **Bettina Bakrania**

       was served the following notice on the same date and in the same manner:

    (1) ☐ 3-day notice to pay rent or quit        (5) ☐ 3-day notice to perform covenants or quit
    (2) ☐ 30-day notice to quit                        *(not applicable if item 7b checked)*
    (3) ☐ 60-day notice to quit                    (6) ☐ 3-day notice to quit under Civil Code, § 1946.2(c)
    (4) ☒ 3-day notice to quit                         Prior required notice to perform covenants served *(date):*
                                                   (7) ☐ Other *(specify):*

UD-100 [Rev. September 1, 2020]                **COMPLAINT - UNLAWFUL DETAINER**                Page 2 of 4

CEB | Essential
ceb.com | Forms·

21-3208055

**UD-100**

| | | |
|---|---|---|
| PLAINTIFF: IRVINE APARTMENT COMMUNITIES, L.P. | | CASE NUMBER: |
| DEFENDANT: Bettina Bakrania | | |

9.  b. (1) On *(date):* **11/08/2021**                    the period stated in the notice checked in 9a expired at the end of the day.
      (2) Defendants failed to comply with the requirements of the notice by that date.
   c. All facts stated in the notice are true.
   d. ☒ The notice included an election of forfeiture.
   e. ☒ A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166. When Civil Code, § 1946.2(c), applies and two notices are required, provide copies of both.)*
   f. ☐ One or more defendants were served (1) with the prior required notice under Civil Code, § 1946.2(c), (2) with a different notice, (3) on a different date, or (4) in a different manner, as stated in Attachment 10c. *(Check item 10c and attach a statement providing the information required by items 9a–e and 10 for each defendant and notice.)*

10. a. ☒ The notice in item 9a was served on the defendant named in item 9a as follows:
      (1) ☐ By personally handing a copy to defendant on *(date):*
      (2) ☐ By leaving a copy with *(name or description):*
            a person of suitable age and discretion, on *(date):*                    at defendant's
            ☐ residence ☐ business  AND mailing a copy to defendant at defendant's place of residence
            on *(date):*                    because defendant cannot be found at defendant's residence or usual place of business.
      (3) ☒ by posting a copy on the premises on *(date):* **11/05/2021**
            ☒ ~~AND giving a copy to a person found residing at the premises~~ AND mailing a copy to defendant at the premises
            on *(date):* **11/05/2021**
            (a) ☐ because defendant's residence and usual place of business cannot be ascertained OR
            (b) ☒ because no person of suitable age or discretion can be found there.
      (4) ☐ *(Not for 3-day notice; see Civil Code, § 1946, before using)* By sending a copy by certified or registered mail addressed to defendant on *(date):*
      (5) ☐ *(Not for residential tenancies; see Civil Code, § 1953, before using)* In the manner specified in a written commercial lease between the parties
   b. ☐ *(Name):*
      was served on behalf of all defendants who signed a joint written rental agreement.
   c. ☐ Information about service of notice on the defendants alleged in item 9f is stated in Attachment 10c.
   d. ☐ Proof of service of the notice in item 9a is attached and labeled Exhibit 3.

11. ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

12. ☐ At the time the 3-day notice to pay rent or quit was served, the amount of rent due was $

13. ☒ The fair rental value of the premises is $        **61.50** per day.

14. ☐ Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). (State specific facts supporting a claim up to $600 in Attachment 14.)

15. ☒ A written agreement between the parties provides for attorney fees.

16. ☐ Defendant's tenancy is subject to the local rent control or eviction control ordinance of (city or county, title of ordinance, and date of passage):

   Plaintiff has met all applicable requirements of the ordinances.

17. ☐ Other allegations are stated in Attachment 17.

18. Plaintiff accepts the jurisdictional limit, if any, of the court.

**UD-100**

| | |
|---|---|
| PLAINTIFF: IRVINE APARTMENT COMMUNITIES, L.P.<br>DEFENDANT: Bettina Bakrania | CASE NUMBER: |

**19. PLAINTIFF REQUESTS**

a. possession of the premises.

b. costs incurred in this proceeding:

c. ☐ past-due rent of $

d. ☒ reasonable attorney fees.

e. ☒ forfeiture of the agreement.

f. ☐ damages in the amount of waived rent or relocation assistance as stated in item 8: $

g. ☒ damages at the rate stated in item 13 from *(date):* 11/09/2021 for each day that defendants remain in possession through entry of judgment.

h. ☐ statutory damages up to $600 for the conduct alleged in item 14.

i. ☐ other *(specify):*

**20.** ☒ Number of pages attached *(specify):* 40

**UNLAWFUL DETAINER ASSISTANT** (Bus. & Prof. Code, §§ 6400-6415)

**21.** ☒ *(Complete in all cases.)* An unlawful detainer assistant ☒ **did not** ☐ **did** for compensation give advice or assistance with this form. *(If declarant has received any help or advice for pay from an unlawful detainer assistant, complete a–f.)*

a. Assistant's name:

b. Street address, city, and zip code:

c. Telephone no.:

d. County of registration:

e. Registration no.:

f. Expires on *(date):*

Date: 11/17/2021

Shelley M. Crawford, Bar #219957      ▶ /s/ Shelley M. Crawford
<br>(TYPE OR PRINT NAME)                                                (SIGNATURE OF PLAINTIFF OR ATTORNEY)

**VERIFICATION**

*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

                                         ▶ See attached verification
<br>(TYPE OR PRINT NAME)                                                (SIGNATURE OF PLAINTIFF)

CEB | Essential Forms
ceb.com

21-3208055

**VERIFICATION**

I, ___Renée  Doll_____, declare that:

That I am the agent for IRVINE APARTMENT COMMUNITIES, L.P., the Plaintiff in this action, and am authorized to make this verification for and on its behalf.  I am making this verification for the Plaintiff because I am the person with the most personal knowledge of the facts contained in this complaint.

I have read the contents of the foregoing Complaint -- Unlawful Detainer and know its contents. The same is true of my own knowledge, except as to those matters which are stated on information and belief, and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 11/17th/21  in ___Irvine_____, California.

Signature: ___Renée J. Doll_____

Name: ___Renée Doll_____

**Authorized Agent for Plaintiff**

VERIFICATION

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made on 03/12/2021 between San Marco Apartments LLC ("Landlord"), and Bettina Bakrania, (whether one or more, "Resident").

### Summary of Lease Terms

| | |
|---|---|
| **Premises** | 718 Veneto<br>Irvine, CA 92614 |
| **Lease Start Date** | 03/12/2021 |
| **Lease End Date** | 04/30/2022 |
| **Gross Monthly Rent** | $1845.00 |
| **Rent Due Date** | 1st day of each calendar month |
| **Security Deposit** | $600.00 |
| **Accepted Forms of Payment** | Personal check, money order, certified funds or online (eCheck or Credit Card) |
| **Make Rent Payable to** | San Marco Apartments |
| **Payment Mailing Address** | San Marco Apartments<br>PO BOX 2600<br>Newport Beach, CA 92658-2600 |
| **Web Address and Telephone Number** | https://residents.irvinecompanyapartments.com<br>(949) 975-1888 |
| **Management Agent Name and Contact Information** | Irvine Management Company,<br>a Delaware corporation<br>131 Theory Irvine, CA 92617<br>(949) 720-5600<br><br>*Note: Landlord may designate a new management agent upon written notice to Resident* |

1.  **Location:** The Premises is located in the San Marco Apartments community ("Community"). The Premises consists of a residential unit together with any appliances and other furnishings listed on the move-in form, and the Garage and/or number of Parking Space(s) listed in Section 6. Resident has had an opportunity to inspect the Premises and the common areas and amenities ("Common Areas & Amenities") and is satisfied as to all matters regarding their condition. Resident acknowledges that Landlord has made no representation or warranty of any nature regarding the condition of the Premises, Common Areas & Amenities, Community or the area where the Community is located. Floor plans and square footage displayed in marketing materials are approximations only and may not be relied upon by Resident.

2.  **Lease Term:** The Lease begins on the Lease Start Date and ends at 11:59 p.m. on the Lease End Date. Landlord makes no representation that the Premises will be ready for occupancy on the Lease Start Date. If Landlord is unable to deliver possession of the Premises on the Lease Start Date, the Lease End Date will not be affected and Landlord shall not be liable for damages to Resident. In such event, Resident shall not be responsible for payment of Rent for the period between the Lease Start Date and the time when Landlord delivers possession. If Landlord is not able to deliver possession within thirty (30) days of the Lease Start Date, either Landlord or Resident may, prior to the time when Landlord delivers possession, cancel this Lease by giving written notice to the other.

    2.1. **Expiration:** Upon expiration of the Lease, but not upon the earlier termination thereof, the tenancy shall automatically continue from month to month unless: (i) Landlord gives Resident written notice of Landlord's intent to terminate the tenancy in accordance with California Civil Code 1946.1; (ii) Resident gives Landlord written notice at least (30) days prior to the Lease End Date of Resident's intent to terminate the tenancy; or (iii) Landlord gives Resident any other termination notice allowed by law. In the event the tenancy continues on a month to month basis, the terms and conditions of the Lease shall apply, except Landlord may increase the Rent (as defined below) or otherwise change the terms of tenancy as allowed by law.

**EXHIBIT**

2.2. Move Out: Upon termination of the tenancy for any reason, Resident shall (a) timely vacate and remove all persons and personal property from the Premises and from all Parking Spaces, Garages, and storage spaces provided under the Lease, (b) return any keys, key fobs and/or remotes that were provided to Resident at move-in, and (c) provide Landlord with Resident's forwarding address. Resident also agrees to be subject to and comply with the following in addition to any applicable provisions contained in the Resident Handbook (the "Handbook") or community rules:

- Resident will return the Premises to Landlord in its original condition, exclusive of ordinary wear and tear, and is responsible for the cost to repair any damage to the Premises beyond "ordinary wear and tear."

- The paint in the Premises should last two years from move in. If Resident changes the color of the walls or ceilings, Resident will be charged for repainting to the original color.

- The Premises must be returned as clean as the day Resident moved in. If Resident elects to have Landlord's vendors clean the Premises upon move-out, Resident will be responsible only for removing Resident's belongings, trash and debris. If Resident leaves trash behind, Resident will be charged for the cost of the trash removal.

- The carpet in the Premises should last five years from installation. Additional costs may be incurred for damage beyond ordinary wear and tear, including without limitation, heavy soil, stains, carpet dye and carpet replacement.

3. Rent: Resident shall pay Landlord Gross Monthly Rent in the amount set forth on Page 1, in advance on or before the Rent Due Date. The Gross Monthly Rent is the amount set forth on page 1 of this Lease and does not include any other monetary obligations of Resident under this Lease, unless provided otherwise by law. Collectively, Gross Monthly Rent and all other monetary obligations of Resident under this Lease are referred to herein as "Rent". Rent for any partial month will be prorated based on a 30-day proration (except February, which will be prorated by the actual number of days in the month). Payments will not be accepted at the Community office. Payment must be made at either the physical or web address above, or at such other place or in such other manner as Landlord may from time to time designate. If payment is made by check or money order, Resident shall write Resident's Unit number on the check or money order. Resident bears the risk of loss of any payment made by mail, unless otherwise provided by law. Checks will be deposited immediately, regardless of whether they are post-dated. In accordance with California law, the Gross Monthly Rent is the Gross Rental Rate.

3.1. Failure to Pay: If Landlord serves a Notice to Pay Rent or Quit or Notice to Perform Covenant or Quit demanding payment, Resident must tender payment by cashier's check or money order only to cure the notice. At Landlord's option and without further notice, Landlord may apply payments first to any of Resident's unpaid Rent, or any other obligations due and owing under the Lease, of any kind whatsoever, and then to current Rent, regardless of notations on checks or money orders and regardless of when the obligations arose. As required by law, Resident is notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to fulfill the terms of Resident's financial obligations.

3.2. Late Fees: Resident acknowledges that if Resident pays Rent after the Rent Due Date, Landlord will incur certain costs, the exact amount of which is extremely difficult and impracticable to determine. Such costs may include, without limitation, processing, enforcement and accounting charges. Therefore, if any payment is not received by the Rent Due Date, Resident shall immediately pay $50.00 as a late fee. The parties agree this late fee represents a fair and reasonable estimate of the actual costs Landlord will incur by reason of late payment by Resident. Landlord's acceptance of Resident's payment of any late fee shall not constitute a waiver by Landlord of Resident's default with respect to the overdue amount, nor prevent Landlord from exercising any other rights and remedies available to Landlord.

3.3. Returned Check: If Resident's payment is returned by the financial institution for any reason, the amount shall be considered unpaid. Resident shall replace any returned payment with certified funds only. In addition to the balance due and any applicable late fee, Resident shall immediately pay a fee of $25.00 per returned check. After receipt of two (2) returned payments, Landlord may, at its option and at its sole discretion, require payment of Rent in the form of certified funds only.

4. Security Deposit: If the funds have not yet been paid, Resident shall pay Landlord a security deposit in the amount of $600.00 ("Security Deposit") upon execution of this Lease. Landlord may commingle the Security Deposit with other funds. The Security Deposit shall be refunded or applied as provided under applicable law. The Security Deposit will not be returned until Resident and all Occupants have vacated, and any Security Deposit returned by check shall be made out to all Residents named in this Lease, or as subsequently modified. If Landlord uses any part of the Security Deposit during the tenancy, Resident shall replenish the Security Deposit to its full amount within ten (10) days.

5. Early Lease Termination Option: Provided Resident is not in default under this Lease, Resident will have the option to terminate this Lease prior to the Lease End Date subject to the following terms and conditions: (a) Resident must provide Landlord with a minimum of 30 days' prior written notice of Resident's intent to vacate the Premises ("Notice to Vacate"), specifying the date of Resident's early move-out ("Early Move Out"), (b) concurrently with the giving of the Notice to Vacate, pay to Landlord a one-time payment equal to two times the Gross Monthly Rent ("Lease Break Fee"), in addition to any Concession Reimbursements, as set forth in the Concession Addendum, (c) timely observe and perform

all terms and conditions of the Lease through and including Early Move Out date, and (d) vacate and deliver possession of the Premises to Landlord on or before the Early Move Out date. Resident agrees that the Security Deposit shall not be used to pay for the Lease Break Fee or the Concession Reimbursements. If Resident vacates or abandons the Premises during the term of the Lease without exercising the early termination option, or fails to strictly comply with the terms and conditions of this paragraph, the Lease term shall be unaffected by the early termination option, and Landlord shall have all of the remedies set forth in paragraph 19.

**6. Parking:** Resident shall have the right to park up to two (2) vehicles in the following parking space(s): Carport #174 (the "Parking Space(s) and/or "Garage"). Landlord may change Resident's designated Garage and/or Parking Space(s) from time to time with seven days advance written notice. Additional parking rules and conditions apply; refer to the Handbook or contact the Community office for more information.

**7. Occupancy:** Only Resident and the following people are permitted to live in the Premises: Bettina Bakrania (the "Occupants").

**8. Household Safety and Resident's Related Parties:** Resident is responsible for ensuring the safety of, and for the conduct of Resident, Resident's Occupants, household members, guests, invitees and any others under Resident's control (collectively, "Resident's Related Parties") both inside and outside the home. Resident should carefully note the location of any fountains, ponds, swimming pools, traffic or parking areas, balconies, patios, windows and parks. Open windows may present a fall hazard, particularly for small children or if furniture (such as couches, chairs or beds) is positioned directly near or below window frames. Positioning of furnishings in model units, website imagery and other marketing materials may not be relied upon in deciding where to safely place furniture. Window screens are not designed to be weight-bearing or prevent falls. Resident is responsible for the supervision and control of Resident's Related Parties while such persons are in the Premises or the Community, and is responsible for any damage or violation of the Lease or the Handbook caused thereby. Violation of this Lease, the Handbook or any community rules by any of Resident's Related Parties shall constitute a material violation of this Lease by Resident.

**9. Utilities:** Resident shall pay for utilities that are provided or allocated to the Premises in accordance with Landlord's Utility Addendum, which is incorporated herein by reference.

**10. Use of Premises, Community, Common Areas, and Amenities:** Resident agrees to use and maintain the Premises solely as a private residence for the Occupants and no one else without Landlord's prior written consent. Resident and Resident's Related Parties shall use the Premises, and Common Areas & Amenities, for the purpose for which they were designed or intended to be used, and in accordance with, and otherwise comply with, this Lease, the Handbook and any community rules that may be established by Landlord from time to time, including without limitation, posted signage. Additionally, Resident and Resident's Related Parties shall comply with any recorded covenants, conditions, restrictions, easements and agreements affecting the Premises or the Community. Resident and Resident's Related Parties shall not: (a) disturb, disrupt, annoy, endanger or inconvenience other residents or invitees within the Community, neighbors, Landlord, Landlord's property manager or the respective officers, directors, members, shareholders, partners, managers, employees, affiliates, contractors, vendors, or representatives of Landlord or Landlord's property manager ("Landlord's Related Parties"), (b) violate any civil or criminal statute, law or ordinance, or (c) cause damage to or commit or permit waste or nuisance in or about the Premises or the Community. Violation of this paragraph, at Landlord's option and subject to applicable law, shall be deemed a non-curable breach of this Lease.

**11. Alterations and Improvements:** Resident shall make no alterations or improvements to the Premises without first obtaining Landlord's written permission, including without limitation painting, wallpapering, window treatments, security or surveillance cameras, permanent shelving, flooring, or adding or changing any lock or security device. If Landlord allows any addition or change of lock or security device, Resident must provide Landlord with a key or code to the lock or device upon installation. If Landlord allows any other alteration or improvement, Resident is financially responsible for restoring the Premises to the condition in which it existed prior to the alteration or improvement.

**12. Damage and Repairs:**

    **12.1.** Repairs and Services: Resident agrees to cooperate fully with and to undertake all efforts and tasks required by Landlord to prepare for and complete repairs and/or services. Resident shall give Landlord immediate written notice if repairs to or services at the Premises may be required. If Landlord makes repairs or provides services, and the condition requiring repair or services was caused by an act or omission of Resident, Resident shall pay on demand all reasonable costs of repair, services or restoration. This includes, but is not limited to, damage caused by Resident's failure to properly ventilate while using the kitchen and bathroom facilities, and costs incurred by Landlord as a result of Resident's failure to cooperate with and/or properly prepare for Landlord's efforts to provide necessary or agreed repairs and/or services to the Premises.

    **12.2.** Damage or Destruction: If the Community and/or the Premises is totally or partially damaged or destroyed, or otherwise rendered totally or partially uninhabitable, by fire, flood, earthquake, accident or other casualty, Landlord shall have the option, in addition to any other options available by law, to (a) treat this Lease as continuing and repair or restore the Premises; or (b) terminate the Lease by giving written notice to Resident.

**12.3. Relocation:** Upon demand by Landlord, Resident and any other Occupants of the Premises shall promptly vacate the Premises to allow Landlord to make repairs, decorations, alterations or improvements, or provide services. Resident will comply with all instructions and requirements necessary to prepare the Premises for the work or services. Resident will not be required to pay Rent for the Premises for the period of time that Resident is required to vacate, unless (i) a condition requiring repair or service was caused by Resident or (ii) Landlord, at Landlord's expense and in Landlord's sole discretion, provides Resident with comparable alternative housing or a hotel during the period Resident is required to vacate the Premises. No other compensation shall be due Resident with respect to Resident's relocation from the Premises.

**12.4. Responsibility for Damage:** Resident is responsible for any of the following resulting from Resident's failure to comply with the terms of this Section 12: (a) damage to the Premises, Building or Community, (b) damage to property of Resident and/or other occupants of the Premises or the Community, and (c) personal injury to Resident or other occupants of the Premises or the Community.

**13. Resident Insurance Requirements:** RESIDENT'S PERSONAL PROPERTY IS NOT INSURED BY LANDLORD. Resident shall maintain at all times during the term of this Lease, at Resident's sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of (i) $100,000.00 personal liability, and (ii) the greater of $10,000.00 or the full replacement value of Resident's personal property, or greater amounts as may be needed as determined by Resident. Resident acknowledges that renter's insurance is for the benefit of both Resident and Landlord. If Resident elects to install a satellite dish as permitted by this Lease, Resident's policy shall specifically insure against claims for bodily injury, death or property damage occurring from the installation, maintenance, operation or removal of the satellite dish. The policy shall name Landlord as an additional interest or interested party. Resident shall provide Landlord with proof of such insurance to Landlord's satisfaction. To the greatest extent permitted by law, Resident waives any and all rights of recovery and rights of subrogation against Landlord and Landlord's Related Parties in connection with any damage, claim or loss that is or would be covered by Resident's insurance coverage. Failure to obtain and maintain renter's insurance is a material breach of this Lease.

**14. Landlord's Liability; Resident's Indemnity:** To the greatest extent permitted by law, Landlord and Landlord's Related Parties shall not be liable for any claims for damages or loss to Resident's or others' personal property, or injury or death to any person caused by any use of the Premises, the Community or any other facility under Landlord's control by Resident or Resident's Related Parties, or arising from any other cause whatsoever. Resident assumes all risk of harm in using the Premises and Common Areas & Amenities and agrees to hold Landlord and Landlord's Related Parties harmless from all liability for any such injury, loss or damage. Resident agrees that Landlord shall not be liable for matters (and this Lease shall not be terminated by any interruption or interference with services or accommodations due Resident) caused by strike, riot, orders or acts of public authorities, acts of other residents, accidents, interruption in or shortages of public utilities, the making of necessary repairs to the building in which the Premises is located or the Community, or any other cause beyond Landlord's control. Resident shall indemnify, defend and hold harmless Landlord and Landlord's Related Parties for any liability, damage, claims for personal injury and/or property damage, cost or expense (including reasonable attorneys' fees), including without limitation any claim brought by or on behalf of Resident's Related Parties, whether incurred by or made against Landlord or Landlord's Related Parties, caused by the negligent, willful or intentional act or omission of Resident or Resident's Related Parties.

**15. Subleasing and Short-term Rentals:** Resident shall not assign its interests under this Lease or sublease all or any part of the Premises. Resident may not list, advertise or rent the Premises for any type of short-term rental, including on Airbnb, Couchsurfing, VBRO, Craigslist or any other advertisement or listing service. Any attempted assignment, at Landlord's election, shall constitute a non-curable default. The original Resident under this Lease shall remain responsible for all of Resident's obligations even if additional Residents are added to or removed from the Lease.

**16. Bedbugs:**

**16.1. Resident Obligations:** Resident must report any signs of bedbugs immediately to Landlord by completing a Maintenance Service Request using the Resident Portal, or by visiting or calling the Community office. Delays in such reporting could result in the spread of bedbugs through the Premises or other areas of the Community. Resident's obligation to keep the Premises in clean condition includes the responsibility to inspect for the presence of bedbugs. Resident must fully cooperate with Landlord's pest control efforts, including without limitation, complying with any preparation recommendations provided by the pest control professional. Resident is responsible to pay for pest control services if Resident's conduct caused or contributed to the pest issue. Resident is responsible for any damages resulting from Resident's failure to comply with the terms of this paragraph.

**16.2. Information about Bedbugs:**

- **Bedbug Appearance.** Bedbugs have six legs. Adult bedbugs have flat bodies about 1/4 of an inch in length. Their color can vary from red and brown to copper colored. Young bedbugs are very small. Their bodies are about 1/16 of an inch in length. They have almost no color. When a bedbug feeds, its body swells, may lengthen, and becomes bright red, sometimes making it appear to be a different insect. Bedbugs do not fly. They can either crawl or be carried

from place to place on objects, people, or animals. Bedbugs can be hard to find and identify because they are tiny and try to stay hidden.

- Life Cycle and Reproduction. An average bedbug lives for about 10 months. Female bedbugs lay one to five eggs per day. Bedbugs grow to full adulthood in about 21 days. Bedbugs can survive for months without feeding.

- Bedbug Bites. Because bedbugs usually feed at night, most people are bitten in their sleep and do not realize they were bitten. A person's reaction to insect bites is an immune response and so varies from person to person. Sometimes the red welts caused by the bites will not be noticed until many days after a person was bitten, if at all.

- Common signs and symptoms of a possible bed bug infestation:

  o  Small red to reddish brown fecal spots on mattresses, box springs, bed frames, mattresses, linens, upholstery, or walls.
  o  Molted bed bug skins, white, sticky eggs, or empty eggshells.
  o  Very heavily infested areas may have a characteristically sweet odor.
  o  Red, itchy bite marks, especially on the legs, arms, and other body parts exposed while sleeping. However, some people do not show bedbug lesions on their bodies even though bedbugs may have fed on them.

For more information see the internet websites of the United States Environmental Protection Agency and the National Pest Management Association.

Report possible bedbug activity immediately by completing a Maintenance Service Request on the Resident Portal, or by visiting or calling the Community office.

16.3. Housekeeping Practices: The following housekeeping practices, which are Resident's responsibility, may reduce the likelihood of a bedbug infestation: avoid accumulation of clutter; clean on a regular basis; arrange furniture to minimize bedbug hiding places; avoid use of secondhand furnishings; cover mattresses and box springs; and check baggage after trips.

**17. Mold:**

17.1  Reporting Obligations: At the time of move-in, Resident must inspect the Premises and note on the Move-in Inspection form the presence of any mold Resident observes. Resident must immediately report to Landlord any plumbing problems, failure or malfunction with the heating, ventilation, air-conditioning system, or laundry system. If Resident observes or otherwise becomes aware of the presence of visible or suspected mold, water intrusion or dampness in the Premises, including but not limited to water leakage from drains or faucets, discoloration (e.g. of walls, baseboards), dampness, musty odors in closets, loose, missing or failing grout or caulk, or other similar conditions (a "Mold Condition"), Resident shall immediately report the Mold Condition to Landlord in writing. Resident shall immediately notify Landlord if Resident experiences any adverse or unusual health conditions or effects which Resident reasonably believes are related to a Mold Condition. Landlord will not be responsible for any adverse health conditions or effects in the event Resident fails to promptly report in writing the adverse health conditions or effects, or a Mold Condition, to Landlord.

17.2  Housekeeping Obligations: Resident is responsible for cleaning the Premises, maintaining appropriate climate control within the Premises (including but not limited to the humidity level), and complying with the provisions of this paragraph to help prevent the occurrence of a Mold Condition.

- Open the windows when appropriate to increase air circulation. Use air conditioning, heating and/or fans as necessary to keep air circulating throughout the Premises. Ensure good air circulation in closets and/or use products to control moisture. Do not overfill closets or storage areas.

- Close windows and doors when appropriate to prevent rain and other water from coming inside the Premises.

- Clean and dust the Premises on a regular basis. Regularly vacuum, mop and clean using environmentally safe household cleaners to remove household dirt and debris that may contribute to mold growth. If a dryer is installed in the Premises, clean the lint screen regularly.

- Periodically clean and dry the walls and floors around the sinks, bathtubs, showers, toilets, windows and patio doors using a common household disinfecting cleaner. Thoroughly dry any spills on carpets and wipe up visible moisture.

- Wipe down and dry areas where moisture sometimes accumulates, like countertops, windows and windowsills. Periodically check for leaks, especially around windows, exterior doors, under sinks and around toilets.

- When showering, be sure the shower door or curtain is completely closed so water does not spray the wall or puddle on the floor.

- Use the bathroom fan or open the bathroom window when bathing or showering until all moisture has vented from the bathroom.

- Use the exhaust fan in the kitchen when cooking or while the dishwasher is running. Allow the fan to run until all moisture has vented from the kitchen.
- Water all indoor plants outside. Use a saucer or catch basin under any plant sitting directly on the floor. Do not maintain an excessive number of indoor plants.

17.3 Responsibility for Damage: Resident is responsible for any of the following resulting from Resident's failure to comply with the terms of this Section 17, including but not limited to Resident's failure to notify Landlord of a Mold Condition or relocate at Landlord's request: (a) damage to the Premises, Building, or Community, (b) damage to property of Resident and/or other occupants of the Premises or the Community, and (c) personal injury to Resident or other occupants of the Premises or the Community.

17.4 Repairs; Relocation; Testing: Resident must fully cooperate with Landlord's mold remediation efforts. In the event Landlord reasonably determines that Resident needs to vacate the Premises in order to remediate the Mold Condition, repair the Premises, or address Resident's reported adverse health conditions or effects, Resident shall relocate, either on a temporary or permanent basis, within three (3) days of Landlord's written request. In the event Resident conducts, or hires any third party to conduct, any type of mold inspection, survey or test within the Premises or any other of the Community, Resident shall immediately provide Landlord with a full and complete copy of any resulting report, statement or recommendation.

18. Application Information: Resident represents that all statements in Resident's Application to Rent ("Application") and in any other documentation provided to Landlord are accurate and complete. Landlord has relied upon the statements set forth in the Application in deciding to rent the Premises to Resident. If Resident omits or falsifies any information on the Application or in any other documentation provided to Landlord, such omission or act constitutes a non-curable default at the time of Landlord's discovery that the information was omitted or false. Resident hereby represents that Resident is not subject to any restrictions imposed by the U.S. Treasury Department's Office of Foreign Assets Control including but not limited to appearing on the Specially Designated National and Blocked Persons List ("SDN List") promulgated by the Office of Foreign Asset Control. Resident agrees to cooperate with Landlord's screening of the SDN list. If Resident is or comes to appear on the SDN, Resident shall be deemed in material non-curable default under the terms of this Lease.

19. Remedies: In the event of any violation, default or breach of this Lease by Resident, Landlord may exercise any or all remedies provided by this Lease or by law, including without limitation those set forth in Civil Code §§1161, 1951.2 and 1951.4. In such event, Landlord may recover damages including the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided. No remedy or election under this Lease shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity.

20. Attorney's Fees: If any legal action or proceeding is brought by either party to enforce any part of this Lease, the prevailing party shall recover, in addition to all other relief, reasonable attorney's fees not to exceed $2,000.00, plus court costs.

21. Right of Entry: Landlord has the right to enter the Premises as allowed by law. Landlord will serve Resident with reasonable written notice before entry unless:

- Entry is due to an emergency, surrender or abandonment of the Premises, or
- Resident agrees that Landlord may enter to make repairs or supply services at an approximate day and time within one week of the agreement, or
- Resident is present and consents at the time of entry, or
- The entry is otherwise permitted by law.

22. Release of Information: Resident grants Landlord the right to disclose information contained in Landlord's records regarding Resident or this Lease at any time, as follows: (a) in connection with the filing, reporting or sharing of credit report information, including without limitation, any negative credit report as a result of Resident's failure to pay amounts due under this Lease; (b) in conjunction with civil, criminal or administrative proceedings or pursuant to subpoena, court order, applicable law or regulation, or law enforcement or governmental agency request; (c) to Landlord's Related Parties, accountants, attorneys or insurers in connection with Landlord's business operations; (d) in connection with the use and/or services provided by Landlord's property management software system; or (e) for any other purpose permitted under applicable law or Landlord's Privacy Policy, which is available online at www.irvinecompany.com/privacy-policy. Resident may request a hard copy of the Privacy Policy from the Community office.

23. Service of Process/Notices/Demands: Service of process, notices and/or demands upon Landlord or the management agent may be served upon the following authorized agent: Corporation Service Company (CSC), 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833-3505, (916) 641-5100 or (800) 927-9800. Landlord may designate a new agent for service of process upon written notice to Resident.



**24. Termination:** Landlord and Resident agree and acknowledge that Landlord may non-renew and/or terminate this Lease as permitted herein and as otherwise permitted by law. The provisions of this paragraph are in addition to all other rights and remedies set forth herein.

**25. Enforcement:** Landlord's failure to enforce any term of this Lease, the Handbook or any policy shall not be deemed a waiver of Landlord's right to enforce such provision at any time, nor shall Landlord's acceptance of a partial payment be deemed a waiver of Landlord's right to full payment. Landlord's acceptance of Rent or any other payment with knowledge of any default by Resident shall not be deemed a waiver, nor shall it limit Landlord's rights, including without limitation Landlord's right to terminate the Lease or pursue an unlawful detainer action. Landlord is not obligated to enforce any provision of this Lease, the Handbook or any policy, and Landlord is not liable to any Resident for any violation by other residents of any such provision.

**26. Time, Interpretation and Integration:** Time is of the essence in this Lease. This Lease shall be construed in accordance with California law. All capitalized terms are defined in the Summary of Lease Terms unless otherwise defined in this Lease. If any provision of this Lease is held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Lease shall remain in full force and effect. This Lease, together with the Handbook, Disclosures and any other addenda, constitutes the entire agreement between Landlord and Resident. Resident acknowledges and agrees that Resident has been provided with a copy of or access to the Handbook, a copy of which may also be requested from the Community office. The Handbook, Disclosures and any other addenda, which may be periodically updated or revised by Landlord, are incorporated into and made a part of this Lease by reference. The parties consider each and every term, covenant and provision of this Lease to be material and reasonable. This Lease supersedes any and all oral or written representations or agreements that may have been made by either party prior to or on the date Landlord and Resident execute this Lease. Any modification to the terms of this Lease must be in writing and signed by both Landlord and Resident to be effective and enforceable.

**If there are multiple Residents, each will be individually and completely responsible for the performance of all obligations under this Lease, jointly with every other Resident, and individually, whether or not in possession.**

Resident understands that the tenancy will automatically continue on a month-to-month basis at the end of the term as specified in paragraph 2 above, unless terminated as allowed by this contract or by law. See paragraph 2.1 above.

RESIDENT:
NAME: _____   DATE: _March 1st, 2021_

LANDLORD:

San Marco Apartments LLC

By: Irvine Management Company,
a Delaware corporation, its duly authorized agent

By: _____

Name: _Community Mgr._

Title: _R. Doll_

NAME: _____   DATE: _____

NAME: _____   DATE: _____

NAME: _____   DATE: _____

NAME: _____   DATE: _____

NAME: _____   DATE: _____

NAME: _____   DATE: _____



Document : ! Resident Handbook and Community Disclosures
Description : Lease 3/12/2021 to 4/30/2022
Unit : 31-718

Company : Irvine Management Company
Property : San Marco Apartments
Packet name : NEW RESIDENT - Bakrania
Cover sheet generated date : 3/12/2021

# RESIDENT HANDBOOK

The rules in this Handbook (the "Rules") have been established for the Community. We may change these Rules at any time by giving written notice to you. To access the most current version of the Rules, request a copy from the Community office or access on the Resident Portal. Capitalized terms in this Handbook have the same meaning as in the Lease. Failure to comply with the Rules shall constitute a material breach of the Lease.

## Maintaining your Home

*Health and Safety:* You must properly use, operate and safeguard the Premises, including any furniture, furnishings or appliances and all mechanical, electrical, gas and plumbing fixtures, and keep them and the Premises clean, sanitary, uncluttered and well ventilated (particularly when using the bathroom and kitchen facilities). You must use your home in a way that does not create a health or safety hazard to any person or property in the building where the Premises is located (the "Building") or the Community. This includes keeping your home free of excessive personal property, pests, trash and dangerous materials. You may not hang anything from fire sprinklers. You must keep smoke and carbon monoxide detectors functioning and in good condition, and promptly notify the Community office of any malfunction. Other than ordinary household products, you may not under any circumstances store, use or dispose of any flammable, explosive, hazardous, toxic or radioactive material anywhere in the Premises, the Building or the Community. If the Premises includes a loft, any closet or storage space within the loft may be used only for storage of non-perishable items. You may not install or operate any appliances within the space.

*Caring for your Home and the Community:* You must keep your home clean, in good condition, and uncluttered. You may not place or distribute posters, signs, leaflets, pamphlets, solicitation materials, or similar items in windows or areas outside the Premises without our advance written permission, except as otherwise provided by law. No personal property may be kept in stairways, hallways, entryways or in other Common Areas & Amenities. Personal items stored or left in the Common Areas & Amenities will be considered abandoned and are subject to immediate disposal.

*Patios and Balconies:* If the Premises has a private patio or balcony, it is your responsibility to maintain such area in a clean and well-organized condition, and free from unsightly material. We reserve the right, in our sole discretion, to determine what may constitute unsightly material, and to prohibit, restrict and control the items on your patio or balcony. Using your patio or balcony for storage is not permitted. Patios and balconies must not be used as a place for animals to relieve themselves. Umbrellas, privacy screens and outdoor fixtures are not allowed without our prior written approval. Only patio furniture and a reasonable number of potted plants with saucers are allowed. Excessive plants, placing plants or other objects on patio or balcony ledges, and overwatering, are not permitted. Allowing water, or runoff containing pet waste or chemicals, to flow onto areas below is not permitted. We may set time and location restrictions for using clotheslines or drying racks.

*BBQs:* Use of any type of open-flame barbecue, grill, heater or similar device on patios or balconies is prohibited, except for an LP gas device with a supply bottle of 1 pound or less. Electric devices and barbecues are permitted.

*Fireplaces:* The Premises may include a wood-burning or gas fireplace. If it does, always make sure the flue above the fireplace is open before using it, and close the fireplace screen after the fire is started. If the Premises includes a gas fireplace, DO NOT ATTEMPT TO BURN WOOD OR ANY OTHER MATERIALS in it.

## Reporting a Maintenance Issue

Proper maintenance is important. You must give us prompt written notice if the Premises needs maintenance, repairs or services. To report a maintenance issue or request maintenance, complete a Maintenance Service Request using the Resident Portal, or by visiting or calling the Community office.

## Emergencies

An emergency is any serious, unexpected event that has caused or could cause injury or death to any person, or could shut down a business or cause physical or environmental damage. IN THE EVENT OF AN EMERGENCY, IMMEDIATELY CALL 911. After calling 911, promptly notify us.

In the event of an urgent plumbing issue (e.g., stoppage or overflow) turn off the "shut off" valve nearest the problem fixture and contact the Community office.

## Gates, Surveillance Cameras and Other Access Control Measures

Regardless of the presence of electronic gates, on-site personnel, patrol cars, surveillance cameras, alarm systems, or other features which may be present at the Community, we cannot guarantee or warrant, and provide no assurance

49866_2

11.2019

regarding, the security or protection of you, your household members, guests, or personal property. We are not authorized or equipped to provide law enforcement or emergency services. We may provide courtesy patrol services as a convenience; courtesy patrol personnel are authorized to enforce the terms of the Lease, this Handbook, and any other Community rules and regulations on our behalf. If we do provide any such personnel or systems, they should not be interpreted as providing additional security or protection, they are precautionary measures, and are subject to human error, absenteeism, tampering, cyber-attacks, or mechanical, electronic or software malfunctions. Gates are intended to control the flow of traffic and to promote privacy only, and are not intended to provide security.

**Key Release**
We will release keys to persons named on the Lease and to any individual you have designated in writing with a valid photo ID.

**Using and Enjoying the Community**
Common Areas & Amenities are meant for the use and enjoyment of all residents. You may not use these areas in any manner that disturbs, disrupts or annoys management staff, other residents, or their guests. Except in designated areas, the use of sports and recreation equipment such as bikes, mopeds, skateboards, roller skates and similar items are prohibited in the Common Areas & Amenities. You may not use Common Areas & Amenities for any commercial or business purpose, and absolutely no commercial group activities or fitness sessions are permitted without our advance written permission. Solicitation in the Community of any kind is strictly prohibited.

*Access:* We may suspend or remove access to Common Areas & Amenities at any time for the purpose of maintenance, repairs, improvements, or for any other reason, without notice and at our sole discretion. We may remove any amenity on a temporary or permanent basis without compensating you.

*Pools and Spas (if the Community has a pool):*
A.      LIFEGUARDS ARE NOT PROVIDED AT ANY TIME. All swimmers swim at their own risk.
B.      Hours and rules are posted at the pool. You must abide by these Rules, all posted signage and applicable health and safety laws regarding use of the pools and spas. Keep pool and spa gates closed and latched when not in use.
C.      The pool and spa are for use by residents and their guests only. You must accompany your guests at all times. Children under the age of fourteen (14) and persons who are unable to swim may not use the pool or spa without adult supervision.
D.      Glass items of any kind in the pool areas are strictly prohibited, and pets are not permitted in the pool or spa areas.
E.      Swimming attire is required to be inside of the pool or spa, and no clothing other than swimming attire is allowed. Infants and incontinent persons must wear waterproof undergarments in the pool and spa.

*Fitness Centers (if the Community has a fitness center):*
A.      THE FITNESS CENTER IS NOT SUPERVISED. Persons using the fitness center or any exercise equipment do so at their own risk. Carefully inspect each piece of equipment prior to use, and refrain from using any equipment that appears to be damaged, dangerous, or not properly functioning.
B.      Hours and rules are posted in the fitness center and must be followed.
C.      The fitness center is for use by residents and their guests only. You must accompany your guests at all times. For health and safety reasons, children under the age of fourteen (14) should not use the fitness center without appropriate supervision.
D.      Glass containers, smoking, eating, alcoholic beverages and pets are not permitted in the fitness center at any time.

*Business Centers/iLounge (if the Community has a business center/iLounge):* Business Center/iLounge hours and rules are posted at each location. These areas are not to be used for extended periods of time and are not meant to be used in lieu of a personal office. These areas are for use by residents only. You must accompany your guests.

*Residential Use:* You may use the Premises, Common Areas and Amenities for residential purposes only. Except for a home office that does not generate traffic or visits to the Community, or a licensed and approved home child care center as permitted by applicable law, you are prohibited from operating any business in or about the Premises or the Community.

*Trash, Littering & Recycling:* Certain waste management practices have been developed for this Community. You must follow local regulations and our guidelines on depositing trash and the collection, sorting and recycling of waste products. You may not leave trash or litter in Common Areas or the Community. If the Community has trash chutes and/or trash

compactors, you may deposit only bagged trash in them. You may not dispose of boxes and other bulky material in trash chutes, as this clogs the chutes and causes several hours of maintenance on chutes and trash compactors.

### Filming of Employees

You agree that you will not cause or permit any photographic, video or audio recording of our employees, affiliates, contractors, vendors, and/or agents anywhere in the Premises or the Community without our written consent, including without limitation, during the performance of work orders. You understand that such recording without our consent shall constitute a material breach of the Lease.

### Packages

We may offer automated Parcel Lockers for you to receive packages. We may impose regulations regarding the use of Parcel Lockers, including access, time, and use restrictions, or impose service fees or other charges. We may also regulate disposal or return of unclaimed packages. You authorize us to accept any packages addressed to you and delivered to us in your absence, and agree to hold us harmless from accepting any packages and from any loss of or damage to the packages, except if caused by our gross negligence or willful misconduct.

### Smoking

If smoking or vaping of tobacco products is permitted in the Premises, the Building or the Community, excessive or disruptive smoking or vaping is nonetheless prohibited. Smoking or vaping excessively, or in any manner which disturbs other residents of the Community, their guests, or our associates, is a material violation of the Lease. For purposes of this section, we have sole discretion to determine what constitutes excessive or disruptive smoking or vaping. Smoking, vaping, growing or manufacturing marijuana or any marijuana derivative is prohibited in the Premises, the Building and all areas of the Community.

### Guests

You may not have overnight guests for more than 10 consecutive days or 20 days in a calendar year, and you are fully responsible at all times for the conduct of your guests. Please refer to your Lease for more information. You may have up to two guests in the Common Areas & Amenities at any given time. Your guests must be accompanied by you at all times when using the Common Areas & Amenities. Your guests may park only in spaces designated for "Guest Parking", and you are responsible for notifying your guests of the parking rules. Any guest vehicles parked outside of designated "Guest Parking" spaces are subject to tow, at the vehicle owner's expense.

### Pets and Animals

Except as otherwise required by law, animals are not permitted in the Community, even temporarily, unless you obtain our prior written permission and sign a Pet Addendum. The size and type of pets permitted and the location where pets are permitted is determined solely by the Community.

### Vehicles & Parking

*Parking:* You may park up to two (2) vehicles in the Community. You must first use your designated parking space to park your and your guests' vehicles, prior to utilizing open parking spaces. Open or unreserved parking spaces are available on a first-come, first-served basis, and spaces may be limited. Additional parking rules and conditions may apply. Contact the Community office for more information.

All vehicles must be insured and registered with our office, and additional vehicles must be authorized by us in writing. Permissible vehicles include automobiles, sport utility vehicles, pickup trucks, mopeds and motorcycles. Limousines, taxicabs, semi-truck cabs, commercial vehicles and recreational vehicles such as motor homes, boats, ATV's, golf carts and trailers, may not be parked or stored without our prior written permission. Parking is for licensed, operational vehicles only.

Parking in fire lanes is strictly prohibited. Motorcycles and mopeds must be parked in parking areas only and may not be left on sidewalks, patios or other areas. Unauthorized, inoperative or improperly parked vehicles, or vehicles remaining in the same space for more than three (3) consecutive days, will be towed away at the vehicle owner's expense. You may not store personal property in parking spaces or carports.

*Garages:* If you are assigned a garage, it may be used only for parking vehicles and the storage of small items. If you store items in your garage, you must leave enough space to park the number of vehicles the garage is designed to fit. An assigned garage is considered your designated parking space and must be used first, prior to utilizing open parking spaces.

49866_2

11.2019

Electrical outlets in the garage may not be used to charge electric vehicles. You may not install or operate any appliances in the garage without our prior written permission. Vehicles may not be parked in front of garage doors unless the area is specifically designed for such parking. Garage doors must be kept closed when not in use. We have the right to inspect your garage at any time upon reasonable notice to determine compliance with the garage and parking rules.

*Electric Vehicle Charging Stations*: If the Community contains electric vehicle ("EV") charging stations, the stations may only be used for parking by an EV that is connected and actively being charged. Absolutely no idle parking is permitted in these stations. We may impose additional restrictions on the use of these stations; for example, we may impose time restrictions to ensure multiple residents may charge EVs during the day.

*Parking Permits*: You may be issued a parking permit. If you lose your parking permit, you will be charged for the cost of its replacement. Additional parking permit rules apply; contact the Community office for more information.

*Vehicle Maintenance & Washing*: Vehicle maintenance is not permitted within the Community. Vehicles may be washed only in designated car wash spaces. Car wash spaces, if provided, are marked and are for use only while washing a vehicle.

## Surveillance Cameras, Antenna, Drones and Satellite Dishes

*Surveillance Cameras*: The Community may contain surveillance cameras in Common Areas & Amenities. You acknowledge and agree that you do not have any expectation of privacy in these areas. Surveillance cameras, if any, may not be monitored in "real time" and do not guarantee or warrant any increased security or safety within the Community. We may install additional surveillance cameras or discontinue use of existing surveillance cameras at any time, without notice. Any and all video or images captured or recorded by these surveillance cameras belong exclusively to us, and are subject to our Privacy Policy and Lease provisions.

*Antenna and Drones*: You may not install or use any type of antenna without our prior written permission, or install, use or maintain any electronic or other device that interferes with the operation of cable television, telephone systems, electrical systems or data transmission service or lines in the Community. Resident and Resident's Related Parties are prohibited from using or operating drones on or from the Community, including over or above the Community, neighboring or nearby properties. This paragraph is intended for the exclusive benefit of the parties hereto and shall not be for the benefit of, create any rights in, or be enforceable by, any other person or entity.

*Satellite Dishes*: You may install one satellite dish for personal use, subject to the following:

A.    The diameter of the dish must be one meter or less. The dish may not be connected to our telecommunications systems.

B.    The dish must be positioned inside the Premises private balcony, patio or terrace. No part of the dish may be attached to or extend beyond the railing.

C.    You must position, maintain and remove the dish in a manner that is consistent with industry standards and does not create a hazard to any person or property. The dish may not be positioned in a manner that causes physical modifications or structural damage to the property, such as holes drilled through exterior walls.

D.    Upon move out, you must remove the dish and pay for any resulting repairs or repainting.

## Moving & Deliveries

You may move furniture to and from the Premises only between the hours of 9:00 A.M. and 6:00 P.M. unless the Community approves or designates different hours. You must remove packing cases, barrels or boxes you use and if you leave packing material in the Common Areas, you agree to pay our cost of removing it for you. You may only make deliveries through the service areas and passageways we designate.

## Fair Housing Provider

We proudly do business in accordance with all federal and state fair housing laws and do not discriminate for any arbitrary reason or on the basis of any protected class, including age, ancestry, race, religion, national origin, color, sex or gender, sexual orientation, gender identity or expression, familial status, marital status, immigration status, citizenship, primary language, source of income, handicap or disability, medical condition, or genetic information.

11.2019

## SAN MARCO APARTMENTS COMMUNITY DISCLOSURES

The following disclosures are made to Residents concerning matters that may affect them while living in the Community. If any information contained herein is of concern to you, please contact the applicable agency or the Community office for more information.

### PROPOSITION 65 NOTICE

⚠️**WARNING:** Building materials containing urea-formaldehyde resins, such as insulation, pressed wood materials, finishes, or adhesives, on this property can expose you to formaldehyde, which is known to the State of California to cause cancer. Fireplaces or unvented gas space heaters, natural gas-powered appliances, as well as exhaust from motor vehicles or other maintenance equipment, on this property can expose you to carbon monoxide and benzene, which are known to the State of California to cause birth defects or other reproductive harm. Talk to your landlord or the building manager about how and when you could be exposed to these chemicals in your building. For additional information go to www.P65Warnings.ca.gov/apartments.

### MEGAN'S LAW

Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

### PARKS AND TRAILS

The Community may contain a private park or may be located near public or private trails or park facilities. The parks may provide a variety of recreational amenities such as sports fields, picnic areas and children's play areas. The parks and trails may be lighted for night usage. Residents may hear noise from activities on nearby parks and trails or experience glare from lighting of such facilities. Please contact the Community Office for information regarding any private park within the Community. For questions regarding any nearby public parks or trails, please contact the parks or community services department of the city or county that operates or maintains such facilities.

### OPEN SPACE AREAS

The Community may be located near or adjacent to public open space land that may include trails, trailheads, parking facilities and other related improvements. These areas have been or may be dedicated to the City, County or another public agency for preservation as permanent open space. Wildlife from these areas may venture into the Community. Keep domestic pets indoors to protect them from being attacked by wildlife and to keep them from preying on endangered species in open space areas. When hiking or bicycling on trails within or near open space areas where public access is permitted, Residents must not leave designated trail areas as any activities outside of the trails may be harmful to protected plant and wildlife species.

### PESTICIDES

Pesticides may have been applied to the unit/building in the past, and a contract has been entered with a Structural Pest Control Company for periodic treatment of the buildings in the Community. You may contact the Community office to request specific information about which pesticides are to be applied and when they are to be applied. State law requires that you be given the following information:

*CAUTION: PESTICIDES ARE TOXIC CHEMICALS.* Structural Pest Control Companies are registered and regulated by the Structural Pest Control Board, and apply pesticides which are registered and approved for use by the California Department of Pesticide Regulation and the United States Environmental Protection Agency. Registration is granted when the State finds that, based on existing scientific evidence, there are no appreciable risks if proper use conditions are followed or that the risks are outweighed by the benefits. The degree of risk depends upon the degree of exposure, so exposure should be minimized.

If within 24 hours following pesticide application, you experience symptoms similar to common seasonal illness comparable to the flu, contact your physician or the Poison Control Center at (800) 222-1222 and the pest control company immediately, and notify Landlord.

### WI-FI SERVICE

Wireless broadband Internet service (Wi-Fi service) might be provided in certain portions of the Community, as arranged by Landlord through an independent provider. If a Wi-Fi service system is present or later installed, persons using the Wi-Fi service are subject to the terms of service of the provider. Any Wi-Fi service may be modified or discontinued at any

time, without notice. No representations or assurances are made as to whether Wi-Fi service will be installed or, if installed, that service will always be available, or that Wi-Fi service will be reliable or secure. Landlord is not responsible for the availability of Wi-Fi service or for any loss, damage or inconvenience experienced by any person using any Wi-Fi service provided in the Community.

## CONCIERGE SERVICES
Your Community may offer Concierge Services, which may include referring Residents to third-party businesses. Landlord has no control over, and assumes no responsibility for, the products, services or practices of any of these businesses and disclaims any and all liability arising from Resident dealings with them. Landlord reserves the right to cancel or suspend Concierge Services at any time, without notice.

## ALARM SYSTEMS
The Premises may be equipped with a built-in alarm system. All alarm system companies are independently owned and operated and not affiliated with Landlord. Landlord has no responsibility for the performance or operation of the alarm system company or any built-in alarm system.

## FLOOD HAZARD
You may obtain information on hazards, including flood hazards, that may affect the Community from the web site of the California Office of Emergency Services at: www.caloes.ca.gov. Any insurance carried by Landlord will not provide coverage for loss of Resident's personal property including losses resulting from flood damage. Resident is required to maintain renter's insurance in accordance with the Lease, and should consider obtaining flood insurance to insure against flood damage to your personal possessions. Pursuant to California Government Code Section 8589.45(a)(4), Landlord is not required to provide additional information concerning potential flood hazards to the Community, and the information provided in this disclosure is deemed adequate to inform Resident.

RESIDENT:

NAME: _____    DATE: _____

NAME: _____    DATE: _____

NAME: _____    DATE: _____

NAME: _____    DATE: _____

NAME: _____    DATE: _____

NAME: _____    DATE: _____

NAME: _____    DATE: _____

LANDLORD:

San Marco Apartments LLC

By: Irvine Management Company, a Delaware corporation, its
duly authorized agent

By: _____

Name: R. Doll

Title: Community Mgr.

## <u>THREE (3) DAY NOTICE TO QUIT – NUISANCE/ILLEGAL ACTIVITY</u>

TO:    **Bettina Bakrania; All Unnamed Occupants**

AND ALL OTHERS IN POSSESSION:

NOTICE IS HEREBY GIVEN that within three (3) days after service upon you of this NOTICE, you are required to quit and deliver up possession of the subject premises to the undersigned or to **IRVINE APARTMENT COMMUNITIES, L.P.** who/which is authorized to receive the same, or the undersigned will institute proceedings against you to recover possession of said premises, to recover court costs, and attorneys' fees as permitted by law.

You are further notified that if you fail to comply, Owner/Agent does hereby elect to declare the forfeiture of your Rental Agreement under which you hold possession of the below-described premises.

You are being served with this NOTICE pursuant to California Code of Civil Procedure section 1161(4), in that you have used the subject premises for an illegal purpose, and/or in a manner constituting a nuisance, as defined by California Civil Code section 3479.

You have also breached the following provisions of your lease and/or the addenda thereto:

LEASE

*"10. Use of Premises, Community, Common Areas, and Amenities: Resident agrees to use and maintain the Premises solely as a private residence for the Occupants and no one else without Landlord's written consent. Resident and Resident's Related Parties shall use the Premises, and Common Areas & Amenities, for the purpose for which they are designed to be used, and in accordance with, and otherwise comply with, this Lease, the Handbook and any community rules that may be established by Landlord from time to time, including without limitation, posted signage. Additionally, Resident and Resident's Related Parties shall comply with any recorded covenants, conditions, restrictions, easements and agreements affecting the Premises or the Community. Resident and Resident's Related Parties shall not: (a) disturb, disrupt, annoy, endanger or inconvenience other residents or invitees within the Community, neighbors, Landlord, Landlord's property manager or the respective officers, directors, members, shareholders, partners, managers, employees, affiliates, contractors, vendors, or representatives of Landlord or Landlord's property manager ('Landlord's Related Parties'), (b) violate and civil or criminal statute, law or ordinance, or (c) cause damage to or commit or permit waste or nuisance in or about the Premises or the Community. Violation of this paragraph, at Landlord's option and subject to applicable law, shall be deemed a non-curable breach of this Lease."*

**EXHIBIT** 2

## RESIDENT HANDBOOK

*"Using and Enjoying the Community*
*Common Areas & Amenities are meant for the use and enjoyment of all residents.*
*You may not use these areas in any manner that disturbs, disrupts or annoys*
*management staff, other residents, or their guests. …*

*Pools and Spas (if the Community has a pool): …*
*B. … You must abide by these Rues, all posted signage and applicable health and*
*safety laws regarding use of pools and spas…*

*Trash, Littering & Recycling: Certain waste management practices have been*
*developed for this Community. You must follow local regulations and our*
*guidelines on depositing trash and the collection, sorting and recycling of waste*
*products. You may not leave trash or litter in the Common Areas or the*
*Community."*

The grounds for the termination of your tenancy are as follows:

**From the inception of your tenancy, you have repeatedly complained to
Management that they are not properly monitoring the pool area, not requiring
residents to wear face coverings while in the pool area or responding
appropriately when other residents are not following the rules. In doing so, you
send several emails to Management, sometimes multiple times in one day, and
threaten to take legal action against them. On one occasion, you also emailed
Management approximately twenty emails in a matter of thirty minutes.**

**Some examples of your correspondence with Management are as follows:**

- **On or about April 17, 2021, you emailed management stating that "several
adults with NO face covering at all" were in the pool area with you.**
- **On or about April 18, 2021, you emailed management to complain that you
observed children jumping the fence by the pool area, not wearing a face
covering and threatened that "Renee is going to get fired over this." Tyler
Fernandez responded within twenty minutes that he removed the children
from the pool area.**
- **On or about April 18, 2021, you emailed management numerous times to
complain that several other residents were not wearing masks, that the
manager made a "snarky comment sent via email reminding me ( AND
ONLY ME ) to wear a face covering" and stated that "If she's not reminding
/ policing anyone ELSE then it logically follows that it \*is\* Discrimination."**
- **Sharon Valdez responded with the following in pertinent part:**

    **"We have pool reservations online so we can be in compliance with
    both State and Local Health Authority Guidelines… The reservations are
    so we have the proper number of households and or residents that may
    use the pool at a time per the local guidance for pool capacity. …**

Residents must adhere to physical distance guidelines both in and out of the pool. This is something we take seriously and we have been monitoring the pool area today (like every day). All residents are following rules by social distancing while in and out of the pool. If pools are monitored, such monitoring is limited to enforcement of physical distancing, face coverings, and limitations on gatherings."

- The same day, you responded that "no- one [sic] but me was 'monitoring'" and that you would be turn you videos over to the health department. You also claimed that you were being required to "unreasonably adhere to rules OTHERS ARE EXEMPT FROM."
- On or about April 19, 2021, you outlined that you had a pool reservation, were notified that masks were required, then, when you arrived for your reservation, observed several residents without masks and "bombard[ed] the office with emails" to complain. Your email expressed that you felt as though management ignored you and "MADE NO ATTEMPT TO RECTIFY THOSE WHO WERE FLOUTING THE RULES" after reminding you that you were required to wear a mask in the pool area, claiming that the rules were not being enforced equally.
- On or about April 26, 2021, you reported that an individual was not wearing a face covering in the jacuzzi.

On or about May 8, 2021, the Law Offices of Kimball, Tirey & St. John LLP served upon you a letter outlining Management's responses to your allegations and reminded you that Management "must be provided a reasonable amount of time to investigate complaints and may not be available immediately upon receiving a complaint to do so" in all instances. The May 9, 2021 letter also demanded that you cease and desist disrupting Management functions with such a high volume of correspondence and refrain from attempting to intimidate them into taking action they are not otherwise legally obligated to take. The letter warned that failure to comply may constitute a violation of your lease.

Shortly after receiving this letter, you began sending a barrage of emails to Management regarding a nearby resident, claiming that they were causing disturbances and that they had several unauthorized occupants in their unit. You frequently claimed to have a group of other residents who were complaining about the same neighbors, but Management did not receive any such complaints. Upon receiving your complaints, Management investigated and was unable to substantiate any of the same. They informed you that they could not confirm or gather any evidence substantiating your complaints despite attempting to on several occasions, but you have continued to repeatedly email Management on a regular basis about the same issue without providing substantive evidence. Additionally, you have provided misleading information to Management in an attempt to get them to take action against the other residents and also continuously use profane and disparaging language toward Management.

Furthermore, on or about September 4, 2021, another resident entered the resident services office to complain about another resident utilizing the pool shower to dye her hair blue. Upon arriving to investigate, Management observed that it was you who was dyeing your hair blue in the pool shower and also causing the shower head and surrounding tiles to be colored blue as well. Management informed you that you were not permitted to utilize the shower in this way or to utilize the shower for any reason other than to rinse off after using the pool or spa, its only intended purpose.

On or about September 11, 2021, you arrived at the resident services office and began pounding on the door extremely loudly, although the office was already closed for the day. A member of the Management staff who was still present in the office went to the door, reminded you that it was outside of office hours and asked you what you needed. You claimed that when you were using the pool shower, another resident approached you while walking her dog through the pool area. You were extremely upset and behaving in a hostile manner and demanded that Management remove the dog from the pool area. When Management informed you that they could not remove this dog from the pool area unless it was going into the pool. You claimed that the dog belonged to the same neighbors that have been complaining about for several months, but there was no evidence to support that. During the conversation, you became increasingly hostile, disrespectful and disparaging toward the staff member. Management staff then told you to submit your complaint in writing so that it could be reviewed and responded to during office hours and asked you to leave. He repeated himself multiple times before you finally complied.

As the staff member was leaving the office for the day, you again approached him and continued your complaint about the dog. The staff member politely reminded you that your complaint would be addressed, but they cannot take action unless a lease violation was confirmed. You then continued on a prolonged rant about the same neighbor you have been complaining about for several months. The staff member again demanded that you submit a written complaint so that it could be addressed appropriately.

The next day, you entered the resident services office to complain about the same neighbors again. During the interaction, you again were extremely agitated and became increasingly disrespectful toward Management staff. The staff member reminded you that your concerns have been taken seriously and investigated and that they cannot disclose any legal action taken against another resident, if any. Despite Management's statements, you continued ranting about the neighbors and began raising your voice and interrupting the staff member any time he attempted to speak. He stated twice that your concerns would be addressed appropriately, then you finally left.

Later that day, after the office was closed, you arrived at the office and knocked. The staff member reminded you of the office hours, but you demanded to be able

to enter the business center.  He reminded you that you could get your documents the next morning during the office hours, then you left.

On or about September 15, 2021, you sent two emails to Management claiming again to have several other residents complaining about the same neighboring residents and making the same allegations, but without providing substantive or verifiable evidence.

On or about October 1, 2021, the Law Offices of Kimball, Tirey & St. John LLP served upon you a THREE (3) DAY NOTICE TO PERMANENTLY PERFORM COVENANT OR QUIT demanding the following:

"YOU MUST PERMANENTLY COMPLY WITH THE ABOVE COVENANT WITHIN THE NEXT THREE (3) DAYS, EXCLUDING SATURDAYS AND SUNDAYS AND OTHER JUDICIAL HOLIDAYS, BY:
1) REFRAINING FROM DISRUPTING MANAGEMENT OPERATIONS, BY REPEATEDLY AND/OR FREQUENTLY SUBMITTING THE SAME COMPLAINTS WITHOUT VERIFIABLE OR SUBSTANTIVE EVIDENCE, DEMANDING THAT MANAGEMENT TAKE ACTION AGAINST OTHER RESIDENTS WITHOUT BEING GIVEN AN OPPORTUNITY TO SUBSTANTIATE THE COMPLAINTS, ARRIVING TO THE OFFICE OR AMENITIES OUTSIDE OF OPERATING HOURS AND DEMANDING ACCESS, OR OTHERWISE;
2) CEASING AND DESISTING ATTEMPTING TO INTIMIDATE, USING PROFANE AND DISPARAGING LANGUAGE AROUND OR OTHERWISE HARASSING OR DISTURBING MANAGEMENT STAFF; AND
3) ONLY USING THE COMMON AREAS AND AMENITIES IN THE MANNER INTENDED, INCLUDING BUT NOT LIMITED TO THE POOL SHOWER(S)."

Shortly after you received the notice, you began sending numerous, repeated emails to the undersigned and Management and posting handwritten notes on the management office reiterating the same complaints without additional substantive evidence and alleging that Management was discriminating against you.

On or about October 4, 2021, at or around 11: 48 a.m., you approached the management office and taped three documents to the glass portion of the door. A staff member opened the door to speak to you about the documents and requested that you not tape anything to the door. Approximately one hour later, at or around 12:45 p.m., you taped a printed email to the glass portion of the door and knocked on the door continuously until angrily walking away.

Later that day, while the property's porter was attempting to clean the common area restroom, you exhibited hostile, rude and disrespectful behavior toward the porter and used profane language repeatedly, causing the porter to feel extremely uncomfortable and as though you were harassing her.

On or about October 9, 2021, when a staff member arrived to the property, she observed an abundance of feces around the main pool shower and in the pool. Management reviewed pool camera footage, and the staff members observed you enter the pool area at or around 10:00 p.m. then shortly after saw water running and a foot kick water and feces from the pool shower area toward the surrounding area and pool. You were the only person to enter or exit the pool area until the staff member arrived earlier that morning. The pool area had to be closed to all San Marco residents, and the pool vendor had to treat the pool with special chemicals to disinfect after the removal of your feces.

On or about October 14, 2021, the community's Service Manager informed Management that you left numerous trash items at the pool shower. That day, at or around 11:10 a.m., you also opened the business center door and intentionally threw a card on the ground for staff members to pick up. On the card, you wrote a request that the maintenance team return to your unit between 2:00 p.m. and 4:00 p.m. since you had been sleeping during your scheduled appointment earlier that day.

## YOUR TENANCY IS HEREBY TERMINATED.

The premises referred to are situated in the City of **IRVINE**, County of **ORANGE**, State of California, designated by the number, street and zip code as **718 VENETO, 92614**.

Dated:   11/5/2021

_(signature)_

_____
**Attorney for Landlord/Owner**

**CC:** Santa Ana Housing Authority

**Enclosure:** Notice of Occupancy Rights under the Violence Against Women Act

# EXHIBIT "D"

DocuSign Envelope ID: 3915E134-CBA5-433F-97BF-48D896F0809E

UD–115

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and state bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| Gregory A. Diamond, SBN 256898<br>920 Steele Drive, Brea, CA 92821 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br><br>**JUL 1 8 2022**<br><br>DAVID H. YAMASAKI, Clerk of the Court<br><br>BY: ___V. DO___ DEPUTY |

TELEPHONE NO.: 714-792-4734                    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: gregdiamond@yahoo.com
ATTORNEY FOR *(Name)*: Bettina Bakrania

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF: Irvine Apartment Communities, L.P.
DEFENDANT: Bettina Bakrania

| STIPULATION FOR ENTRY OF JUDGMENT<br>(Unlawful Detainer) | CASE NUMBER:<br>30-2021-01232944-CL-UD-CJC |
|---|---|

1. IT IS STIPULATED by plaintiff *(name each)*: Irvine Apartment Communities, L.P.          and
   defendant *(name each)*: Bettina Bakrania

2. [X] Plaintiff [ ] Defendant *(specify name)*:                                        is awarded
   a. [X] possession of the premises located at *(street address, apartment number, city, and county)*:
        718 Veneto, Irvine, Orange County

   b. [X] cancellation of the rental agreement.          [ ] forfeiture of the lease.
   c. [ ] past due rent $
   d. [ ] total holdover damages. $
   e. [ ] attorney fees $
   f. [ ] costs $
   g. [ ] deposit of $                                   [ ] See Item 3.
   h. [ ] other *(specify)*:
   i. Total $ _____ to be paid by [ ] *(date)*:          [ ] Installment payments (see item 5)

3. [X] Deposit. If not awarded under Item 2g, then plaintiff must
   a. [ ] return deposit of $                            to defendant by *(date)*:
   b. [X] give an itemized deposit statement to defendant within three weeks after defendant vacates the premises (Civ.
          Code, § 1950.5).
   c. [ ] mail the [ ] deposit [ ] itemized statement   to the defendant at *(mailing address)*:

4. [ ] A writ of possession will issue immediately, but there will be no lockout before *(date)*:

5. [ ] AGREEMENT FOR INSTALLMENT PAYMENTS.
   a. Defendant agrees to pay $ _____ on the *(specify day)* _____ day of each month beginning
      on *(specify date)* _____ until paid in full.
   b. If any payment is more than *(specify)* _____ days late, the entire amount in Item 2i will become immediately due and
      payable plus interest at the legal rate.

6. a. [ ] Judgment will be entered now.
   b. [ ] Judgment will be entered only upon default of payment of the amount in Item 2i or the payment arrangement in Item 5a.
          The case is calendared for dismissal on *(date and time)* _____ in
          department *(specify)* _____ unless plaintiff or defendant otherwise notifies the court.
   c. [ ] Judgment will be entered as stated in *Judgment—Unlawful Detainer Attachment* (form UD-110S), which is attached.
   d. [X] Judgment will be entered as stated in Item 7.

Form Approved for Optional Use
Judicial Council of California
UD-115 [New January 1, 2003]
**STIPULATION FOR ENTRY OF JUDGMENT**
(Unlawful Detainer)
Code of Civil Procedure, § 664.6

DocuSign Envelope ID: 3915E134-CBA5-433F-97BF-48D896F0809E

UD–115

| PLAINTIFF: | *Irvine Apartment Communities* | CASE NUMBER: |
|---|---|---|
| DEFENDANT: | *Bettina Bakrania* | *3b-2b2l-0l282444.CC-Cup.CJC* |

7. [X] Plaintiff and defendant further stipulate as follows *(specify):*
Judgment to be entered only if possession is not returned to Plaintiff by September 30, 2022; the case will be dismissed if possession is returned as agreed. Itemized statement referenced in 3(b) is to be conveyed to Defendant's attorney Greg Diamond at the address listed above.

8. a. The parties named in item 1 understand that they have the right to (1) have an attorney present and (2) receive notice of and have a court hearing about any default in the terms of this stipulation.

b. Date: 7/13/22

*Renée Doll*
_____
(TYPE OR PRINT NAME)

Susan E. Greek
_____
(TYPE OR PRINT NAME)    Bar # 126739

▷ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

▷ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

[ ] Continued on *Attachment 8b* (form MC-025).

c. Date: 7/14/2022

Bettina Bakrania Cameron
_____
(TYPE OR PRINT NAME)

DocuSigned by:
▷ [ ] _____
D8041A8EFD594FC...
(SIGNATURE OF DEFENDANT OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▷ _____
(SIGNATURE OF DEFENDANT OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▷ _____
(SIGNATURE OF DEFENDANT OR ATTORNEY)

[ ] Continued on *Attachment 8c* (form MC-025).

9. IT IS SO ORDERED.

Date: _____

_____
JUDICIAL OFFICER

  

UD-115

| PLAINTIFF | Irvine Apartment Communities | CASE NUMBER | 30-2021-01233744-CL-UD-CJC |
|---|---|---|---|
| DEFENDANT | Bertine Bakonis | | |

7. [X] Plaintiff and defendant further stipulate as follows (specify):
Judgment to be entered only if possession is not returned to Plaintiff by September 30, 2022; the case will be dismissed if possession is returned as agreed. Itemized statement referenced in 3(h) is to be conveyed to Defendant's attorney Greg Dimond at the address listed above.

8. a. The parties named in item 5 understand that they have the right to (1) have an attorney present and (2) receive notice of and have a court hearing about any default in the terms of this stipulation.

a. Date: 7/13/22

RenÉe Doll
(TYPE OR PRINT NAME)

Susan E. Greek
(TYPE OR PRINT NAME)   Bar # 130730

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

[ ] Continued on Attachment 8a (form MC-025).

a. Date: 7/14/22

(TYPE OR PRINT NAME)

Gregory A, Dimond    SBN 256598
(TYPE OR PRINT NAME)

(SIGNATURE OF DEFENDANT OR ATTORNEY)

(SIGNATURE OF DEFENDANT OR ATTORNEY)

(TYPE OR PRINT NAME)

[ ] Continued on Attachment 8b (form MC-025).

9. IT IS SO ORDERED.

Date: 7/18/2022

Judge Sandy N. Leal
(JUDICIAL OFFICER)

UD-115 [Rev. January 1, 2003]   **STIPULATION FOR ENTRY OF JUDGMENT**   Page 2 of 2
**[Unlawful Detainer]**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2040 Main Street, Suite 500
Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND
MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC
STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (with supporting declaration)(UNLAWFUL DETAINER)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/20/2022 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

   United States Trustee (SA) (US Trustee): ustpregion16.sa.ecf@usdoj.gov

   Jeffrey I Golden (Trustee) lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com;lfisk@wgllp.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/20/2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

   Bettina Mary Bakrana (Debtor) 718 Veneto Dr., Irvine, CA 92614

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/20/2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

   Judge Scott Clarkson

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/20/2022 | R. Scott Andrews | /s/R. Scott Andrews |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.